72 So.2d 69

**WATERS et al. v. MINES.**

**I Div. 501.**

Supreme Court of Alabama.

April 22, 1954.

654

Ralph L. Jones, Monroeville, and Frank G. Horne, Atmore, for appellee.

Barnett, Bugg & Lee, Monroeville, B. E. Jones, Evergreen, for appellants.

PER CURIAM.

This is a suit by appellee (plaintiff) against appellants (defendants) for the recovery of a house and lot located in Burnt Corn, Monroe County, Alabama. The lot is sixty by two hundred and ten feet and is situated in the N.E. corner of S.E.¼ of S.E.¼ of S.E.¼, section 2, township 7, range 9, and is sometimes referred to as "29.100ths," meaning presumably that fractional part of an acre.

This is the second appeal. See, Lowrey v. Mines, 253 Ala. 556, 45 So.2d 703. There was another verdict and judgment for Mrs. Mines and the appeal is from that judgment.

The lot had been owned by Mrs. Laura Crook and a mortgage executed by her came into the ownership of Reconstruction Finance Corporation (hereinafter referred to as R. F. C.). A bill was filed in equity to correct the description in that mortgage and in the deed of the lot to Mrs. Crook and the foreclosure of the mortgage. That suit resulted in a decree granting the relief sought. Upon the basis of which a sale was made in foreclosure of the mortgage and the R. F. C. became the purchaser. A deed to the land was executed to R. F. C. by order of the court, dated July 22, 1935. The plaintiff in this case claims that Mrs. Crook had adverse possession of the house and lot after the deed to R. F. C., continuing until Thanksgiving day in November 1945. Her claim is based solely upon such adverse possession.

The evidence tends to show that at the time of the register's deed to R. F. C. on July 22, 1935, the Crooks were not living in the house but were living at the Watkins place in Burnt Corn, about a mile from the house in question, having moved there about 1932, and had rented the house here in question to their daughter Mrs. Mines, the plaintiff, who was living in the house on July 22, 1935. The Mines continued to live in the house until the later part of January or the first of February 1937, when they went to the Watkins place where the Crooks were living. They left their furniture and effects in the house in question. Mr. Mines went to Atlanta seeking work and Mrs. Mines followed him there in June

1937. While in that status and on February 12, 1937 the R. F. C. deeded the house and lot to defendant Lowrey.

The defendants claim that at that time the house was vacant and that there were no effects in it. Whatever its status, it so remained until shortly after June 1937 when Mrs. Crook and her husband moved back into the house and lived there until April 16, 1944 when they moved to Atlanta, leaving Newt Roberson in charge of the house in question. Newt Roberson was a neighbor and agreed to look after the place for them and had the keys. On November 20 (or 23), 1945, the house not being occupied at that time, Sam Lowrey, son of the defendant Lowrey and who lived next door to it, called upon Newt Roberson for possession, which Roberson refused to deliver: whereupon Sam Lowrey broke into the house for his father, defendant, and defendant Lowrey has had possession since then.

Mrs. Laura Crook died June 17, 1946, leaving as her survivors her husband O. M. Crook, a son O. M. Crook, Jr., and a daughter Mrs. Mines and also another daughter. On November 17, 1947, O. M. Crook made a deed to the lot in question to his daughter Mrs. Mines, the plaintiff in this case. Plaintiff's title is therefore dependent upon that of her mother, Mrs. Laura Crook, and her claim of title was solely dependent upon adverse possession during the period extending from July 22, 1935 to November 20, 1945.

It will be noted that this is four months more than ten years. So that her adverse possession must have originated within that period and is to be determined in the light of section 828, Title 7 of the Code. That statute contains certain requirements to justify the acquisition of title by adverse possession. One is color of title and the other is listing of the land for taxation. On the former appeal plaintiff's effort to satisfy that statute related to a claim of color of title, which was the deed she had and the chancery proceeding correcting the description in that deed, which also corrected the description in her mortgage and fore-

closed the mortgage as above stated. The court on that appeal held in substance the foreclosure of that mortgage and the deed under its direction prevented Mrs. Crook from having any benefit of them as color of title.

On the second trial, without making further claim of color of title, the plaintiff has undertaken to prove a compliance with section 828, supra, with respect to listing the land for taxation. That statute in this connection provides that the adverse claimant "shall have annually listed the land for taxation in the proper county for ten years prior to the commencement of the action". Applying that requirement to the facts of this case it would mean ten years before November 20, 1945 when Mrs. Crook ceased to have possession of the land.

■ To have the benefit of section 828, supra, in so far as concerns this appeal, there are two principles which must be met. One is that the property must be annually listed for ten years prior to November 20, 1945; and the other is that the possession of Mrs. Crook must not only be open and notorious, but there must be an explicit disclaimer of holding the possession in subordination to the R. F. C. or its purchaser and that disclaimer must be brought home to the actual knowledge of said R. F. C. or its purchaser. In some cases it is said that this may be by such open and notorious acts of ownership as to raise a presumption of notice, the equivalent of actual notice. Lowrey v. Mines, supra; Bellenger v. Whitt, 208 Ala. 655, 95 So. 10; Yancey v. Savannah & Western R. Co., 101 Ala. 234, 13 So. 311.

■ Our first consideration in this connection is with reference to the listing of the land for taxation in compliance with section 828, supra. In this respect it is pertinent to say that any listing for taxation prior to July 22, 1935, when all the rights and interest of Mrs. Crook were divested out of her, is in the same status as the color of title considered on former appeal. The conveyance of that date divested her of all benefits and claims, good, bad or colorable, which she had at that time except the statutory right of redemption. This included any benefit from listing the land for taxation, which she did on December 1, 1934 for the year 1935. There is in evidence a copy of the tax list dated December 17, 1935 to Mrs. Laura Crook.

■ Objection was made to that assessment because it does not describe the property in question. The description and the valuation (the same as for the preceding year) are stricken out with "X" marks across them, with a memorandum "check and see if bank of Evergreen has an asst.". This was the first listing due to be made after the sale of July 22, 1935. There should have been ten annual listings prior to November 20 (or 23), 1945, when Lowrey went into possession, as required by section 828, supra. If there was such a listing as the statute requires each year when it was due to be made on or before January 1st, section 37, Title 51, Code, including January 1945, it would be sufficient compliance with that feature of the statute, as we shall show. When the statute requires an annual listing for ten years "prior to the commencement of the action," it means of course while the adverse claimant is in possession. It does not mean that there must be a listing beginning at least ten calendar years prior to November 20, 1945, but ten annual tax listings prior thereto in accordance with statutory requirements. The first of the ten listings due to be made must have been after July 22, 1935. This was permitted by law to be done during the period from October 1st to December 31, 1935, section 37, Title 51, for the tax year 1936. That counts as one yearly listing within the meaning of section 828, supra. There was another listing due to be made while the adverse claimant was in possession during the same period in each of the years 1936, 1937, 1938, 1939, 1940, 1941, 1942, 1943 and 1944 all prior to November 1945. A listing after November 1945 was after Mrs. Crook had lost possession, and is not here important. Such listings with the one made in December 1935 constitute ten yearly listings of the land prior to entry and seizure of it by the defendant Lowrey in November 1945.

In each such listing the land must ordinarily be sufficiently described to show that it is the property intended to be assessed. Jones v. Mitchell, 258 Ala. 651, 64 So.2d 816. But that requirement is subject to the provision of section 828, supra, that: "An inadvertent failure to list the land for taxation, or any unintentional mistake in the description of the assessment * * * shall not bar the party of his action or defense on his adverse possession." The description which bears the "X" marks is that the lot is in the N.E.¼ of S.E.¼ of S.E.¼, whereas it is in the S.E.¼ of S.E.¼ of S.E.¼. A five room house is also assessed. The evidence tends to show that this was an unintentional mistake. We need not detail the circumstances so indicating. The jury was properly instructed as to that. McCraw v. Lindsey, 209 Ala. 214, 95 So. 898.

In the case of Jones v. Mitchell, supra, some trespassers entered upon the land and undertook to divide it between themselves. Each separately claimed a part of it. But there was no accurate description of the part each claimed. And in making the assessment the description did not suffice to locate the tract each claimed. Being trespassers, tax listing was necessary. And that required such description as would support a claim of adverse possession. We observed that the tracts, as attempted to be described in the assessments, were sufficient in aid of adverse possession without color of title, and wholly incorrect in some respects as claimed by the respective parties. This was not an unintentional mistake, and that case has no application where the issue is an unintentional mistake.

As to the "X" marks over the description, the evidence tends to show that O. M. Crook signed the assessment for his wife Laura Crook who gave no authority for the cross marks to be made, and neither he nor she knew it had been done. The jury could find that it was an inadvertent omission or unintentional mistake.

Passing now to the assessment or listing for taxation dated December 30, 1936, which is signed by O. M. Crook, Jr., with Mrs. Laura Crook's name as owner stricken with a mark through it, and "O. M. Crook, Jr.," inserted. He is a son of Mrs. Laura Crook. The evidence tended to show that it was the custom of the tax assessor to make out assessment sheets each year like that of the preceding year and when the taxpayer presented himself to make the listing the assessor asked him if there were any changes to be made from that of the preceding year, and if none the taxpayer signed the sheet as prepared.

The evidence tends to show that Mrs. Crook told her son to make the assessment and he signed it as it had been prepared. The jury could find that this was an "inadvertent failure to list the land for taxation". For each of the succeeding years to and including the period beginning October 1st to December 31st, 1945, an assessment was made to Mrs. Laura Crook without the notation of an irregularity. We think therefore it was properly submitted to the jury to determine whether the listing for taxation required by section 828, supra, was complied with.

We come now to the question of whether the possession of Mrs. Crook was adverse for a period of ten years after July 22, 1935, and prior to November 20 (or 23), 1945. We have referred above to the nature of proof required to support that claim. It was stated in the Bellenger case, supra, that evidence of the payment of taxes was not of itself sufficient to establish title by adverse possession, but it tends to show the hostile character of the possession when offered with other evidence of adverse possession.

To establish title by plaintiff the evidence must show to the reasonable satisfaction of the jury that between July 22, 1935 and November 20, 1935 Mrs. Crook made an explicit disclaimer of holding the house and lot in subordination to the R. F. C., and an assertion of such claim in her was brought home to the R. F. C. or its authorized agent. Whatever claim she asserted prior to July 22, 1935 would not be sufficient. So that listing the land for taxation in December 1934 would not be evi-

dence of a hostile possession after July 22, 1935. The first listing after July 22, 1935 was December 17, 1935. That does not serve to give notice of the hostile character of her possession on or before November 20, 1935. Whatever evidence of a notorious assertion of ownership, if any, after November 20, 1935 could serve no useful purpose here unless there is other evidence that such assertion began before that date and after July 22, 1935. There was evidence given by the secretary of Mr. B. E. Jones, the attorney who represented R. F. C. in procuring the decree of foreclosure and sale to R. F. C., that in response to his effort, Mr. and Mrs. Crook and Mr. Mines came into Mr. Jones' office at Evergreen and had a conversation with him. Her version of what occurred is in substance that their voices were loud and she listened to the conversation from another room. They were talking about a letter the lawyer had written them, and a good deal of discussion was had. That Mr. Jones finally told them if they did not give possession he would have to send the sheriff and move them out. Finally they said they wanted to rent the place and an agreement was made, provided it met with the approval of Mr. Morgan (an R. F. C. agent). The witness was shown a carbon copy of a paper and she testified that Mr. Jones had dictated it to her and she had transcribed it and that it set out the agreement there verbally made and the amount they were to pay. Defendant's attorney offered to prove that the original was mailed to R. F. C. and not under his control. He then offered in evidence the carbon copy, to which the court sustained objection and exception was noted. It was said to be marked defendant's exhibit "D". When the evidence shows that an original writing is out of the state and in possession of a stranger to the suit parol evidence of its contents is admissible. 32 Corpus Juris Secundum, Evidence, § 831, p. 759; Webb v. Gray, 181 Ala. 408(13), 62 So. 194; Hoyle v. Mann, 144 Ala. 516(8), 41 So. 835; Manning v. Maroney, 87 Ala. 563, 567, 6 So. 343.

On cross examination the witness testified that Mrs. Crook was claiming to own the place at that time and Mr. B. E.

Jones told them unless they could reach an agreement, he representing the R. F. C. and as its agent would call the sheriff and have them put out of possession. Mr. B. E. Jones testified in substance that in July 1935 he was attorney for R. F. C. and a few days after July 22, 1935 Mr. and Mrs. Crook and Mr. Mines came to his office in Evergreen in response to a letter he wrote them, and they had quite a long discussion. He related that conversation in the following language:

"They first came in, the three of them, and told me that they had gotten my letter to give possession of the house and that they were not living there; that was Mr. and Mrs. Crook, and could not give possession, because it was in the possession of Mr. Mines. They had got out and Mr. Mines was in possession, and I said: 'Mr. Mines is your son-in-law' and they said: 'Yes', and I said: 'you all switched on us up there' and they said that Mr. Mines was in possession—well I told them, I said, 'You folks have given me enough trouble about this property already and I have an order for a writ of possession and I have it in the hands of the sheriff and all I have to do is call him and he will go there and if you don't give possession. I am going to call the sheriff' and they said: 'But the sheriff couldn't put Mr. Mines out' and I told them we would see; that I had a lis pendens notice on record and Mr. Mines knew all about the transaction and he could not be innocent and if they were going to take that position, I would call the sheriff and ask him to put the stuff on the street and they said they had no where to go and I said, 'I was trying to be decent to you when I notified you'. This was all the conversation. * * *

"I said, 'I tried to be decent and unless you all sign a paper, you, *Mrs. Crook, because you claim to be owner,* and you, Mr. Mines, because you say you are in possession, that you will deliver the property to the Reconstruction Finance Corporation, and rent it, or else I will have the sheriff to go

there and give possession' and they asked how much would it rent for and I told them I couldn't tell them that that was out of my jurisdiction; I tried, while they were there, to call Mr. Morgan and couldn't get him to answer, and I told them I would have this agreement, that I would recommend that they be allowed to stay there on this condition: that Mrs. Crook and Mr. Mines both sign an instrument that they delivered possession and also sign a rent note and I was—I would send Mr. Morgan up there with it within the next day or two, and they would have to agree with him on the time and amount and they said, "We will do it if he don't charge too much rent; we can't pay too much, and if you will send him there with a paper we will sign it, if we can agree on the rent', that is the agreement we made." ·

Mr. Crook and Mr. Mines testified that they did not go to Mr. Jones' office and had no conversation with him as he and his secretary had testified, and made no agreement to rent the place and never paid any rent to R. F. C. Mrs. Mines is therefore claiming the benefit of something they testified did not occur. So that from the undisputed evidence the occurrence is as Mr. Jones and his secretary testified, or it did not occur at all. In either aspect it does not show notice of a claim superior to that of R. F. C. Mr. Crook and Mr. and Mrs. Mines testified in substance that they did not know of any thing having been done after July 22, 1935 to give notice to R. F. C. of the assertion by Mrs. Crook of a claim of title adverse to R. F. C. The only evidence of a claim asserted in that time, with notice to R. F. C. is that of what occurred in Mr. Jones' office, as testified to by him and his secretary. Their testimony does not show a distinct disavowal of the subordinate nature of Mrs. Crook's claim, but it was referable to her statutory right of redemption. Some sort of delivery of possession was necessary to retain the right of redemption when demand for it was made by the foreclosure purchaser. A Section 730, Title 7, Code.

The affirmative charge was due to be given as requested by defendants. It is not necessary to discuss other assignments of error. The judgment should be reversed and the cause remanded.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON and SIMPSON, JJ., dissent.

CLAYTON, J., not sitting.