100 So.2d 19

**Hugh FOSTER**

v.

**James Henry FOSTER et al.**

4 Div. 852.

Supreme Court of Alabama.

Jan. 23, 1958.

Alton L. Turner, Luverne, and J. O. Sentell, Jr., Montgomery, for appellant.

Lightfoot & Bricken, Luverne, for appellees.

GOODWYN, Justice.

The appellant, Hugh Foster, filed in the circuit court of Crenshaw County, in equity, on July 29, 1953, a statutory bill to quiet title (Code 1940, Tit. 7, § 1109 et seq.) to the east half of the northeast quarter of section 19, township 8, range 17, situated in Crenshaw County and containing 80 acres, more or less. Named as respondents were James H. Foster, Carolyn Foster, Clodyne Foster, H. Lanier Foster and Lila Foster. The bill alleges that complainant owns said lands in his own right and is in peaceable possession of it; that the respondents "unjustly claim or are reputed to claim some right, title or interest in or encumbrance upon" said lands; that "the nature or character of such claim or title is unknown to complainant"; and that "no suit is pending to enforce or test the validity of such title, claim or encumbrance." The bill calls for respondents, pursuant to § 1110, Tit. 7, Code 1940, supra, "to set forth and specify their title, claim, interest, or encumbrance upon" said lands "and how and by what instrument the same is derived and created."

The respondents answered the bill, denying complainant's peaceable possession of the lands and alleging that respondents H. Lanier Foster, James H. Foster and Clodyne Foster "have a just, legal and lawful title and claim" to the lands "by virtue of a foreclosure deed executed in their favor on February 21, 1953, and recorded in deed book 67 on page 172 in the Office of the Probate Judge, Crenshaw County, Alabama." The answer was made a cross-bill, it being therein prayed that a decree be rendered "placing the respondents and cross-complainants in peaceable possession" of the lands. The cross-bill also contains a prayer for general relief.

The complainant, in his answer to the cross-bill, alleged "that for more than ten (10) years he has been in open, notorious,

exclusive, hostile, actual and continuous adverse possession of said premises, claiming to own the same against the whole world, and that for more than ten years prior to the filing of the original bill of complaint he has annually listed the said land for taxation in Crenshaw County, Alabama, the County wherein said property is located." The answer also contains an admission that his possession "is without the consent or permission of respondents and that he has refused to relinquish possession of said premises to respondents after repeated demands for the same have been made."

All of the evidence was taken before a commissioner. Submission was had on such evidence and the pleadings. Thereafter a decree was rendered holding complainant to have "no right, title or interest in or encumbrance upon said lands" and that "the respondents-cross complainants, H. Lanier Foster, James H. Foster and Clodyne Foster are the joint owners" of the lands. It is from that decree that complainant brings this appeal.

█ Since the testimony submitted to the trial court was taken before a commissioner we must weigh and consider the evidence de novo and arrive at a conclusion without the aid of any presumption in favor of the trial court's decision on the issues of fact presented. In other words, we must sit in judgment on the evidence as if at nisi prius. Clark v. Wood, 264 Ala. 415, 88 So.2d 568; Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556; Grand Lodge, Knights of Pythias of Ala. v. Hermoine Lodge No. 16, Knights of Pythias of Decatur, 258 Ala. 641, 64 So. 2d 405; Stephens v. Hill, 249 Ala. 299, 301, 31 So.2d 136; May v. Hillman, 237 Ala. 541, 543, 187 So. 864; Rescia v. Waldrop, 234 Ala. 338, 339, 175 So. 287.

The testimony is rather voluminous and in many respects conflicting. However, we think the following salient facts are established, viz.: In April 1941 Hugh Foster went into possession of the land pursuant to an oral agreement with his brother,

Houston Foster, the then owner, whereby Hugh Foster was to become the owner in settlement of a claim against Houston Foster arising out of their father's estate. No deed was ever executed to Hugh Foster. Houston Foster assessed the land for taxation for the year 1941 and for some years prior thereto. For the years 1942 through 1946 Hugh Foster assessed it. For the years 1947 through 1953 it was assessed both by Hugh Foster and by Mrs. Houston (Clodyne) Foster. Houston Foster died on August 31, 1943, leaving as his heirs and next of kin his widow, Clodyne Foster, and two sons, James H. Foster and H. Lanier Foster, the appellees. On May 3, 1941, after Hugh Foster went into possession, Houston Foster and his wife executed a mortgage on the land here involved (and on other land and certain personal property) in favor of the First National Bank of Dozier to secure a $10,000 demand note. This mortgage was duly recorded in the office of the judge of probate on May 9, 1941. On July 26, 1946, the Bank transferred this mortgage to H. Lanier Foster. The transfer was filed for record on January 20, 1953. On February 21, 1953, the said mortgage was foreclosed with H. Lanier Foster, James H. Foster and Clodyne Foster becoming the purchasers of all the farm lands included in the mortgage (333 acres) for the sum of $10,000. A foreclosure deed conveying said property to them was executed and recorded on February 21, 1953.

The position taken by appellant is that he acquired title by reason of his adverse possession of the land for 10 years coupled with an annual listing of the land for taxation during said 10-year period.

The position taken by appellees is that appellant was in possession of the land by permission of Houston Foster and in recognition of his title, and that appellant's possession, therefore, was not adverse to Houston Foster and his successors in title; and further, that there was no disclaimer by appellant that he was holding in subordination to the mortgage to the First National

Bank of Dozier, and for this reason he could not acquire title by adverse possession as against appellees' title acquired under the foreclosure deed.

■ As we understand appellant's position he does not, in this suit, claim to have acquired title by adverse possession coupled with color of title derived from or through Houston Foster but, instead, that his title has been acquired by adverse possession coupled with the annual listing of the land for taxation for 10 years, which, like color of title, is one of the alternative requisites for establishing title by adverse possession, § 828, Tit. 7, Code 1940. Accordingly, the principle, relied on by appellees, that a mortgagor or one holding under him, in order to hold adversely against a mortgagee, must make explicit disclaimer of holding possession in subordination to the mortgagee's title, has no application. See Waters v. Mines, 260 Ala. 652, 656, 72 So. 2d 69; Barrentine v. Parker, 236 Ala. 188, 190, 181 So. 263; Smith v. Rhodes, 214 Ala. 691, 692, 108 So. 737; Bellenger v. Whitt, 208 Ala. 655, 656, 95 So. 10; Christopher v. Shockley, 199 Ala. 681, 683, 75 So. 158; New England Mortgage Security Co. v. Fry, 143 Ala. 637, 647, 42 So. 57, 111 Am. St.Rep. 62; Elsberry v. Boykin, 65 Ala. 336, 342; Coyle v. Wilkins, 57 Ala. 108, 109; Herbert v. Hanrick, 16 Ala. 581. There is no dispute that Hugh Foster listed the land for taxation for the prescribed 10 years and we think the evidence shows his possession to have been adverse during that period. The fact that someone else, not in possession of the land, in this instance Clodyne Foster, also listed the land for taxation during part of the period does not affect the right of Hugh Foster to establish his title by adverse possession under the statute, § 828, Tit. 7, Code 1940, supra.

The only evidence showing any possessory act by Houston Foster or appellees after Hugh Foster went into possession in 1941 was with reference to the sale of timber. On direct examination H. Lanier Foster testified that he or his father had cut the timber in 1941 or 1942. On cross-examination he testified that he had had George Compton to cut it. Compton testified that while cutting it "in 1949 or 1941" Houston Foster told him to stop, as "he was going to try to arrange it and let Hugh have the place." As against this more or less uncertain testimony we think the evidence clearly establishes that Hugh Foster, during the period of his occupancy from 1941 to 1953, exercised acts of ownership sufficient to show that his possession was adverse and not in recognition of anyone else's title. Pertinent to this conclusion is the principle that, while evidence of the payment of taxes is not of itself sufficient to establish title by adverse possession, it tends to show the hostile character of the possession. Waters v. Mines, supra; Bellenger v. Whitt, supra.

The fact that Hugh Foster made attempts to acquire a deed to the land should not be taken as a recognition of title in Houston Foster or appellees so as to defeat the adverse character of his possession. As thus stated in Newsome v. Snow, 91 Ala. 641, 642, 8 So. 377, 24 Am.St.Rep. 934:

"* * * It is well settled that when the vendee has complied with the terms of the contract on his part by paying the purchase money, and is entitled to the legal title, whether the contract be in writing, or by parol, having discharged all pecuniary duty to the vendor, he has a perfect equity, and his possession, in pursuance of such sale and purchase, is presumed to be antagonistic, and, if continuous for the statutory period, will bar the vendor's right of entry, or of action; which presumption may be rebutted or overcome by showing recognition of the vendor's right of entry, or a subordination to his legal estate. Potts v. Coleman, 67 Ala. 221; Tillman v. Spann, 68 Ala. 102.

"* * * It is not essential that defendant's claim of right or title should be good, or believed to be good.

Knowledge that his title is defective does not prevent his possession from being adverse, if the other essential elements exist. ˙ It is sufficient that there is a *bona fide* purpose to assert and rely upon his possession and claim of right as hostile or adverse to that of the real owner. Bernstein v. Humes, 75 Ala. 241; Manly's Adm'r v. Turnipseed, 37 Ala. 522; Alexander v. Wheeler, 69 Ala. 332. Actual claim of ownership, not the *bona fides* or strength of the claim, is the test or element of adverse possession. Smith v. Roberts, 62 Ala. 83. * * *"

From Tennessee Coal, Iron & Railroad Co. v. Linn, 123 Ala. 112, 132, 26 So. 245, 249, 82 Am.St.Rep. 108 is the following:

"When the plaintiff acquired possession from his brother, and the brother accepted the plaintiff's lands, and went into the possession of them, in the spring of 1865, the contract between them became executed, and the plaintiff's possession became adverse to him, notwithstanding the exchange was made by parol agreement. There can be no difference, on principle, between this case and where a verbal sale of lands is made, and the purchaser put into possession upon the payment by him of the purchase money. In the latter case the purchaser's possession, after paying the purchase price, is presumed to be in his own right, and is adverse to his vendor. If this possession continues for the statutory period of 10 years without recognition of, or subordination to, the legal title of the vendor, the right of entry or action to recover the possession is barred. * * *"

From what we have said it follows that the decree appealed from is due to be reversed and the cause remanded.

Reversed and remanded.

LAWSON, SIMPSON and MERRILL, JJ., concur.