166 So.2d 423

**J. B. SYLVEST**

v.

**Willie Walter STOWERS.**

3 Div. 127.

Supreme Court of Alabama.

June 30, 1964.

Mooneyham & Mooneyham, Montgomery, for appellant.

Robt. B. Stewart, Jones, Murray & Stewart, Montgomery, for appellee.

MERRILL, Justice.

This is an appeal from a decree determining a boundary line between coterminous owners and giving effect to a purported agreement in the form of a suggested decree executed by counsel for both parties.

Appellee, Mrs. Stowers, filed a bill of complaint against appellant, Sylvest, to de-

termine a disputed boundary between their adjoining lands. When the case was first set for trial, the parties reached a settlement which was reduced to writing in the form of a final decree, signed by counsel for both parties and mailed by counsel for appellee to the then trial court, Judge Hugh Maddox. Before the envelope containing the agreement was opened by Judge Maddox, counsel for appellant notified the court that the purported decree did not contain the agreement which had been reached by counsel, and Judge Maddox found that the decree did not reflect the understanding of the parties, but was based upon a misunderstanding, and restored the case to the trial docket.

When the cause came on for trial, Judge Maddox had resigned and the case was assigned to Judge Emmet. Appellee filed a motion to enforce the written settlement agreement, but the court reserved a ruling on the motion and proceeded to hear the case on its merits on December 18, 1963. Two days later, the court entered a decree finding for the appellee on the merits, and found further that the parties had entered into an agreement and gave "full force and effect" to the agreement under Rule 14, Rules of Practice in the Circuit and Inferior Courts, Tit. 7, Appendix, Code 1940.

## I. On The Merits

This is one boundary line case where there is no material conflict in the evidence. Appellant's land lies west and north of appellee's land. Appellant purchased his land in 1943. His deeds called for Lots 8, 9 and 10 and he was shown a fence which was pointed out as the line between his property and the adjoining 160 acres which was known as the McDade Exemption. Appellee purchased this 160 acres in 1945 and for over ten years there was no question but that the fence was the boundary between them. Appellee's son-in-law and agent, John A. Garrett, testified that each of the parties actually worked and farmed their lands up to the fence, they considered it to be their boundary and they each helped

and contributed to its repair and maintenance, which Garrett said was a common practice in the county.

Appellant testified that he went into possession of the land west and north of the fence in 1943 when he purchased it; that he harvested hay on it, usually three times a year; that appellee harvested up to the fence on their side; that he intended to hold to the fence under the belief that the fence was the true property line, and that he claimed title to the fence as the land north and west of the fence had been pointed out to him as the land that was deeded to him.

Carl C. Harmon, a licensed, registered surveyor, testified that he had been employed by appellee to survey the land in 1959 and he finished the job in 1961. According to his survey, the true north line was south of the fence (thereby taking some acreage from Sylvest), and the true west line was west of the fence (thereby taking acreage from Stowers).

Under these undisputed facts, the trial court erred in holding that appellee was entitled to relief on the merits.

■ Where the question is a disputed boundary line between coterminous owners, the statutory evidentiary prerequisites of adverse possession are inapplicable. Tit. 7, § 828, Code 1940; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554; Stokes v. Hart, 273 Ala. 279, 139 So.2d 300, and cases there cited.

■ If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160,

and cases there cited; see Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55.

In Salter v. Cobb, 264 Ala. 609, 88 So.2d 845, we said:

"As between coterminous landowners where a question of boundary line is presented, when parties agree upon the location of a line fence or one of them proceeds to enclose his property and erects a fence intended as a line fence and holds actual and exclusive possession to it as such, his possession is adverse and if continued for ten years ripens into title. The controlling fact is one of intention and if there is an inference arising from the evidence that there was an intention on the part of the complainant to hold and enjoy the property up to the line claimed by the complainant as the true dividing line between the property, with the assent or apparent recognition of it as such on the part of respondent and his predecessors in title for the stated period, this is sufficient to discharge the complainant's burden of proof. And if the possessor considered and claimed the land up to the established line as her own, the possession is hostile even though she is claiming more than she owns and claims by mistake of fact. Though the established division line might have been erroneous in fact, if it may be inferred that the fence was believed to be the true line and the claim of ownership was to the fence, the possession is adverse and ' "does not originate in an admitted possibility of a mistake." ' * * * "

■ Appellee concedes in brief that according to the "recent opinion in Lay v. Phillips, ante p. 273, 161 So.2d 477, the facts of our case would appear to justify the Respondent's claim to title under ten years adverse possession." But reliance is placed upon a statement made by appellant on cross-examination. On both direct and cross-examination, appellant stated several times that he claimed to the fence because it

had been pointed out to him as being the line when he purchased the land in 1943, and he had done so for nineteen years believing it to be the true boundary line. Counsel for appellee had asked several questions trying to get appellant to say that he did not intend to claim any property other than that described in his deed. As we have already shown, "it is immaterial what he might or might not have claimed had he known he was mistaken," but objections to these questions were overruled and finally the following occurred:

"Q If your deed called for 600 acres and if you are actually in possession of 600 acres, then, would you have ever or would you now claim 615 acres?

"MR. FLOYD MOONEYHAM: Objection, Your Honor.

"THE COURT: Overruled.

"THE WITNESS: If you are trying to get me to say had I known that this acreage belonged to Mrs. Stowers and she didn't get the deed to the other until three years later, when I bought the place, what would I have done if I had knowledge * * *

"MR. STEWART: Yes, sir.

"THE WITNESS: I would have helped her move the fence on up to the proper line.

"MR. STEWART: Yes, sir. That's just exactly what I thought you would say * * *

"THE WITNESS: But I had no knowledge of anything. It had never been called to my attention and my contention was and is now that I own up to the fence. The fence was pointed out to me as my line."

Appellee contends that the statement, "I would have helped her move the fence on up to the proper line", is an admission of the absence of intention to claim to the fence. We cannot agree.

This court has made it abundantly plain that one does not have to be a willful landgrabber or dishonest in order to acquire title by adverse possession. We quote from Brantley v. Helton, 224 Ala. 93, 139 So. 283:

"Adverse possession as between adjoining landowners, where a question of boundary line is presented, has been many times declared by this court. When the parties agree upon the location of a line fence, or one of them proceeds to inclose his property, and erects a fence intended as a line fence, holds actual and exclusive possession to it as such, his possession is adverse, and, if continued for ten years, ripens into title.

"If the location of the fence is merely tentative, not intended to define a permanent boundary, and possession is taken, not under claim of title to the fence, but merely to the true line, to be thereafter ascertained, such possession is not adverse.

"The controlling fact is one of intention. The mere fact that a mistake was made in locating the boundary, and there was never an intention to claim the property of another, does not negative adverse possession. Such a rule would make adverse possession to depend upon bad faith.

"Was there an intention to fix a dividing line, each to have the enjoyment of his own property, and was possession taken and held accordingly, each claiming the property held as his own, because he considered it his own? If so, the possession is adverse. Of course, adverse possession may arise from boldly and knowingly taking the property of another, or taking it regardless of whether he believes it is his, thus ousting the true owner, and holding in hostility to him.

"But in law a hostile possession is not limited to any such case. It is hostile when held as his own, claimed as his own, whether by mistake or willfully."

Here, the undisputed evidence is that appellant was put in possession of all the land up to the fence when he purchased it in 1943; that he had held actual possession of it for nineteen years prior to the filing of the suit; that appellee had held up to the fence on her side for seventeen years; that for over ten years both parties had recognized and accepted the fence as the boundary line between their properties; that they jointly maintained the fence; that they have continuously worked their land up to the fence, and no one but appellant has exercised possessory rights over the disputed strip since 1943. Under this evidence and the authorities cited, appellee was not entitled to have a line other than the fence declared the boundary line between the coterminous owners.

## II. The Purported Agreement

We have made a meticulous search of this record and we fail to find any evidence of the purported agreement before the trial court when the final decree was rendered on December 20, 1963.

Relief in equity can only be granted on allegations and proof; and allegations, admitted and proved, are the only premises which will uphold a chancery decree. McDonald v. Mobile Life Ins. Co., 56 Ala. 468; Majors v. Killian, 230 Ala. 531, 162 So. 289.

On the day of the trial, appellee amended her bill by adding paragraph 6, as follows:

"Complainant further avers that on the day this cause was set for trial in September, 1963, the parties in person and through their attorneys agreed to accept the boundary as determined by the survey of Carl C. Harmon dated April 3, 1961, which was made a part of the original Complaint herein, to have him stake the corners and lines according to said survey, to relocate

the fence along said lines, to apportion the cost of the survey, and to the payment by Complainant to Respondent of $750.00. This agreement of the parties and their counsel was reduced to writing and was executed by counsel for both parties and filed with the Court. This agreement was a full and complete settlement of all issues tendered by the pleadings and should be held by the Court to be binding upon all parties."

After his motion for a continuance and motion to strike the amendment were overruled, appellant answered by denying the allegations of paragraph 6 and demanded strict proof of same. This put the burden of proving the allegations upon complainant (appellee). Prowell v. Wilson, 219 Ala. 645, 123 So. 38; Hicks v. Biddle, 218 Ala. 2, 117 So. 688.

At no time during the trial was any evidence offered in support of the allegations in paragraph 6 of the amended bill. The complete transcript shows that the purported agreement was not introduced in evidence at the trial and the testimony of the register in chancery shows that it was not in evidence when the decree was signed on December 20, 1963.

Notice of appeal was filed on January 16, 1964, and appeal and supersedeas bonds were filed the next day. The court reporter filed the transcript of the evidence on February 17, 1964, and counsel for appellee filed objections to the transcript on March 6, and the hearing on the objections was held on March 13. At that time, and for the first time, the purported agreement along with the letter of transmittal of appellee's counsel to Judge Maddox became a part of the evidence and a part of the record.

■ The mere fact that the purported agreement was kept by the register in the same court file as the other papers and exhibits did not make it a part of the evidence. In Preston v. Preston, 253 Ala. 186, 43 So.2d 398, where the decree included

matters in the file but not before the court, we said:

"The learned circuit judge seems to have relied on the principle that a court takes judicial knowledge of its own records. That is true for a limited purpose only. This principle does not apply nor does it justify the Court in supplying material evidence in the case to be decided. If such evidence is or can be found in the records of the court, it must be offered by the parties and in equity cases noted as required by Equity Rule 57, Code of 1940, Title 7 Appendix, p. 1095. Catts v. Phillips, 217 Ala. 488, 117 So. 34; Anders et al. v. Latimer et al., 198 Ala. 573, 73 So. 925.

"For the error noted, the decree of the circuit court is reversed and the cause is remanded."

■ Clearly, the purported agreement was not in evidence and not before the trial court for consideration when the decree was rendered, and the court erred in giving it "full force and effect" in the decree.

■ The objections to the transcript were filed "under the provisions of Title 7, Section 827(1a), Code of Alabama 1940." We have held that that section does not apply to equity cases, Busby v. Pierson, 272 Ala. 59, 128 So.2d 516. But in view of our holding that it is "within the jurisdiction and power of the trial judge to ascertain and direct the register in preparing the true record for this court under the evidence on motions" to correct the transcript, Nolan v. Moore, 254 Ala. 74, 46 So.2d 825, and since no objection was raised to applying the method outlined in Tit. 7, § 827(1a), we treat the objections as if properly raised by motion.

Appellee conceded before the trial court that she insisted only on the second objection which was: "The record fails to contain a copy of the judgment agreed to by

the parties and executed by their respective attorneys."

When the hearing was had on March 13, 1964, the purported agreement was offered, was objected to, the objection was overruled, and it was received in evidence for the first time. The record shows no evidence or testimony as to why it should have been included in the transcript, that it had been incorrectly omitted, or that it had ever been introduced in the trial of the case. The undisputed evidence of the register was that the purported agreement was "not part of the official file."

Regardless of whether the matter of correcting a transcript in the trial court be raised by motion in equity or at law under Tit. 7, § 827(1a), the corrections are limited to what actually happened in the trial court in order that a true record may be presented to the appellate court. It is not proper to use a hearing for correction of the transcript for the introduction or receipt of evidence which could or should have been introduced on the trial. The introduction and receipt of the purported agreement into evidence or for inclusion in the transcript, being first presented nearly three months after the rendition of the final decree, came too late, and the court erred in ordering its inclusion in the transcript.

The learned trial court should have dismissed complainant's bill rather than proceed to the establishment of the disputed boundary line. The decree will be reversed and one here rendered dismissing the bill. McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160; Brantley v. Helton, 224 Ala. 93, 139 So. 283.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.