246 So.2d 78

**Herman BARNETT et al.**

**v.**

**Jessie Mae MILLIS et al.**

**6 Div. 628.**

Supreme Court of Alabama.

March 11, 1971.

Knight & Knight, Cullman, for appellees.

Asa C. Hartwig and James E. Thompson, Cullman, for appellants.

LAWSON, Justice.

This is an appeal from a decree of the Circuit Court of Cullman County, in Equity, which established a boundary line between lands of appellants on the east and lands of appellees on the west, which lands are situated in the Southwest Quarter of the Southeast Quarter of Section 10, Township 10 South, Range 2 West, Cullman County, Alabama.

The complainants below, in their amended bill, alleged that they and the respondents below are coterminous landowners.

Paragraph 7a of the amended bill of complaint reads:

"Your Complainants would further show that the true land line between Complainants and Respondents has been established for more than twenty years and Complainants have used their property up to said true land line for more than twenty years; that said true land line was marked by a fence extending north and south, which said fence marked the true line between the parties' lands for a period of more than twenty years, during which time your Complainants and their predecessors in title have, under claim of right, had actual occupancy, claim definite, positive, notorious, continued, adverse and exclusive possession of the lands to said fence for more than twenty years, all with the intention to claim title to the lands in question to said fence, and that said fence was fixed, definite, established, acquiesced, agreed upon and abided by as being the boundary line between Complainants' and Respondents' predecessors in title for more than twenty years, and Complainants aver and charge that the Respondents removed said fence but the location of said fence can be established by competent evidence. Your Complainant, Jessie Mae Millis', concrete driveway has been established on said line for more than twenty years and your Complainant, Jessie Mae Millis, has claimed title to the lands to the east end of said concrete driveway for more than twenty years; further that your Complainant, Jessie Mae Millis, has had actual occupancy and claimed definite, positive, notorious, continued, adverse and exclusive possession of the lands to the east end of said driveway for more than twenty years. That said driveway is the only means of ingress and egress that your Complainant, Jessie Mae Millis, has to her property, above described, located immediately adjacent to U.S. Highway 278 East.".

Appellants, respondents below, filed their answer admitting coterminous ownership; denying that the true line is as claimed by appellees; and alleging as follows:

"* * * the land lines between complainants' land and respondents' land have heretofore been established by a competent surveyor and the Court should render a decree declaring that said lines, as established by said surveyor, is the true and correct land line between complainants' land and respondents' land. * * *"

Following a hearing at which the testimony was taken ore tenus, the trial court established a boundary line substantially as claimed by the complainants, appellees.

From that decree the respondents below appealed to this court.

We will allude to certain principles which have been established or recognized in our cases which have dealt with boundary line disputes.

Equity has jurisdiction to determine disputed boundary lines.—§ 2, Title 47, Code 1940; § 129, Title 13, Code 1940; Branyon v. Kirk, 238 Ala. 321, 191 So. 345; Smith v. Cook, 220 Ala. 338, 124 So. 898.

■ A boundary line between adjacent landowners which is not controlled by a government survey or subsectional lines located on the basis of a government survey may be changed by adverse possession.—Morgan v. Larde, 282 Ala. 426, 212 So.2d 594; Stokes v. Hart, 273 Ala. 279, 139 So. 2d 300; Whiddon v. White, 285 Ala. 109, 229 So.2d 498; Sims v. Sims, 273 Ala. 103, 134 So.2d 757.

■ The provisions of § 828, Title 7, Code 1940, to the effect that adverse possession cannot confer or defeat title to land unless the party claiming adverse possession shall show that a deed or other color of title has been recorded for ten years, or unless such party or those through whom he claims has assessed the land for taxation for a period of ten years, if the land is subject to taxation, have no application to cases involving a question as to boundaries between coterminous owners. Section 828, Title 7, supra, expressly so provides.—Salter v. Cobb, 264 Ala. 609, 88 So.2d 845; Stokes v. Hart, supra; Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423; Smith v. Brown, 282 Ala. 528, 213 So.2d 374.

■ In a boundary line suit the trial court should establish the true boundary line whether or not it is the one contended for by either party.—Deese v. Odom, 283 Ala. 420, 218 So.2d 134.

■ If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken.—Sylvest v. Flowers, supra; Smith v. Brown, supra.

■ The rule has been applied in boundary line disputes that questions of adverse possession are questions of fact properly determined by the trier of facts

and the determination so made, where the evidence is taken orally, as here, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly erroneous or manifestly unjust.—Butts v. Lancaster, 279 Ala. 589, 188 So.2d 548; Morgan v. Larde, supra.

The reason frequently given for that rule is that the trial court can better judge the credibility of witnesses by seeing and hearing them testify. That rule is particularly appropriate in this case because most of the witnesses were questioned about lines, locations, distances, monuments, culverts, fences and the like which appeared on a diagram which had been drawn on a blackboard.

The answers of the witnesses given in response to questions so propounded are meaningless to us, since we do not have the pointing finger or any information which enables us to determine the particular line, location, distance, monument, culvert or fence to which the witness referred. The trial court was not so limited. See Christian v. Reed, 265 Ala. 533, 92 So.2d 881; Garrett v. Kirksey, 279 Ala. 10, 181 So.2d 80; Williams v. Davis, 280 Ala. 631, 197 So.2d 285.

We set out below a question which is typical of innumerable questions propounded to most of the witnesses who testified in this case:

"Q Well, let me show you this diagram and this is 278 running east and west and this is west toward Cullman and east toward Holly Pond and this is the Stallings property and Jessie Mae's half acre up on one corner and this would be the Barnett property here. Back here and over here is the Latta property. Do you recognize this diagram, is that a fairly accurate portrayal of how it lays?"

After answering the last sentence of that question in the affirmative, the witness, upon being questioned in regard to the diagram, gave the following testimony:

"A Well, here was a culvert in here and this culvert must be on the west side

of the road, and there is supposed to be a rod that was five or six feet east of this culvert back a little bit and the rod was, as well as I remember, was an inch and a half or two inches in diameter and was probably about fifteen or eighteen inches high. And this line was supposed to go straight, and this culvert was right in there. This property over here didn't need a bridge or culvert down in here because it was way on up here, and I understood all of the time that this culvert was for this lot here for the people that lived here. Mrs. Jessie lives there, so I don't know too much about the corner, I saw the corner of her lot, and I understood that this line going south was supposed to be straight and this wasn't a public road, it was a road, I suppose, just for the people that lived here, or anybody could travel it that merely wanted to. I don't know. I walked all over it many times because I lived over here a short ways across the highway angling like that (indicating). And about all I know is that the culvert was along over here on the east side of her land next to the ditch. This east Holly Pond highway was here and I guess that it was five or six feet from the line or from the culvert, something like five or six feet over there, and the way I understood it, it was supposed to go straight back."

■ The trial court at the request of counsel for the litigants made a personal inspection of the property of the complainants and respondents during the course of the trial. Following that inspection, the trial court interrupted the examination of several witnesses to ask questions which were clearly based on the court's familiarity with the lands of the parties litigant. Obviously, we are not positioned to evaluate the answers to those questions as was the trial court. See Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617; Monroe Bond & Mortgage Co. v. State, 254 Ala. 278, 48 So.2d 431; Mutual Service Funeral Homes v. Fehler, 257 Ala. 354, 58 So.2d 770. In view of the personal inspection of the premises by the trial court, the decree is reviewed here as if it were a verdict of a jury.—McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160.

■ As we construe the record, several deeds were introduced in evidence by the respondents which are not included in the record sent to this court. We have said many times that where there was evidence before the trial court which is not before us, which may have influenced it in arriving at the conclusion it reached, we do not disturb that finding.—Eaton v. Shene, 282 Ala. 429, 212 So.2d 596, and cases cited.

It is apparent that the boundary line fixed in the decree under review was based on a finding by the trial court from the evidence adduced that the complainants acquired title to the strip of land in dispute by adverse possession.

It follows that the only question for our determination is whether the trial court erred to a reversal in so finding.

■ In view of the presumptions in favor of the trial court's findings of fact, to which we have alluded to above, and the absence from the record of evidence which was apparently before the trial court, we certainly cannot say that there is a clear, decided preponderance of the evidence against the conclusion reached by the trial court based on its findings from the evidence.—Edwards v. Farmer, 285 Ala. 118, 229 So.2d 507.

A detailed discussion of the evidence would serve no useful purpose.—§ 66, Title 13, Code 1940; Rowell v. McCollough, 270 Ala. 576, 120 So.2d 729.

The decree under review is due to be affirmed. It is so ordered.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN and MADDOX, JJ., concur.