253 So.2d 298

Emmett W. CLOUD et ux.

v.

SOUTHMONT DEVELOPMENT COM-
PANY, a Corp., et al.

6 Div. 796.

Supreme Court of Alabama.

Oct. 7, 1971.

Corretti, Newsom, Rogers & May, Birmingham, for appellants.

Dominick, Fletcher, Yeilding & Dominick, Birmingham, for appellees.

McCALL, Justice.

The complainants appeal from a final decree in which the trial court found that the complainants failed to meet the burden of proof. The decree quiets title in the respondents to a particularly described tract of land that lies east of and adjacent to a tract owned by the complainants. The decree also locates and establishes the common boundary between the parties as contended for by the respondents.

The complainant-appellants' assignments of error Nos. 6, 7, 8, and 12 all question the fixing of the boundary line as contended for by the respondent-appellees, and the

refusal of the court to fix one as contended for by the appellants. These are the only assignments argued by the appellants in their brief, and they are treated together. The complainants rely solely on the proposition that since the deed to them conveyed all of the property west of the top of the bluff in the quarter-quarter section involved, this call in their property description should control.

Complainants' land is described in their deed of conveyance from Herold J. Schwab and others, dated July 15, 1966, as follows:

"Part of the Southwest quarter of the Northwest quarter, Section 32, Township 18, South, Range 2, West, containing 20 acres more or less, said land described as being all the land West of the top of the Bluff. Situated in Jefferson County, Alabama, as described by deed from J. H. Morris and wife, Emma Morris to Jonas Schwab Company, Inc., recorded in Volume 239, Page 458, dated January 19, 1899. Said Parcel commonly referred to as Tract 27 on the real property map of said Section 32, Township 18, Range 2 West, Jefferson County, Alabama. * * *"

The complainants assert that the east line of their property, which is the disputed boundary between the parties, is the edge of the bluff in the said SW¼ of the NW¼, because the call in their deed is for all land west of the top of the bluff, and since the call is from a natural monument or boundary, this call prevails over any inconsistent calls, citing Van Valkenburg v. Geron, 249 Ala. 467, 31 So.2d 767; Blalock v. Johnson, 256 Ala. 349, 54 So.2d 611; Spires v. Nix, 256 Ala. 642, 57 So.2d 89; Williams v. Bryan, 197 Ala. 675, 73 So. 372; Ayers v. Watson, 113 U.S. 594, 5 S.Ct. 641, 28 L.Ed. 1093; Sheppard Envelope Co. v. Arcade Malleable Iron Co., 335 Mass. 180, 138 N.E.2d 777; De Escobar v. Isom, 112 Cal.App.2d 172, 245 P.2d 1105.

The edge of the top of the bluff from which the complainants claim that their land extends to the west, in the quarter-quarter section, runs in a generally northeast and southwest direction. The course of the edge of the bluff is irregular and is broken or crossed by openings at several places through which the ground below the edge of the bluff slopes gradually upwards and toward the west. These openings are referred to as draws. In 1969, the complainants had a plat of survey of the edge of the bluff made by a civil engineering and land surveying firm. This survey locates the line which the complainants contend is the common boundary between the parties.

The respondents, whose adjoining lands lie on the east of complainants, contend that the course of the top of a ridge, on top of the bluff, is the boundary between them. The ridge line is a short distance west of the edge of the top of the bluff. It was surveyed in early 1928 or prior thereto, by a civil engineer and land surveyor named Schoel and it is called the Schoel line hereafter. When the respondent Morgan inspected this line, which his grantor, Joel B. Bearden, pointed out to him as the west property line, before he purchased in 1957, the respondent found some iron pins on the line where the turns or angles are made.

The Schoel line also runs in a northeast and southwest direction and is described as a "traverse of Bluff or Ridge in SW¼ of NW¼ going South from North line of 40." Making east-west measurements of distances between the two lines of survey, at different points along their course, reveals intervals that vary from almost a contact of the two lines with each other, to distances of as much as seventy-five feet, or possibly more. Thus the respective contentions of the parties result in an overlapping of their properties when the two separate descriptions are sought to be platted with each other. There is no apparent dispute as to the correctness of the survey of either the Schoel line or of the line as contended for by the complainants, or as to where either line is located. The

dispute is whether the Schoel line or the line constituting the edge of the top of the bluff shall prevail as the true boundary between the parties. The ownership of the land between these two lines is the only property in dispute and neither party claims over or beyond the disputed area on to the remaining land of the other. So, to solve the issue, a determination is necessary of which of the two lines is the boundary.

■ Under Tit. 7, § 828, Code of Alabama, 1940, our adverse possession statute, the three alternative prerequisites, (1) a deed or other color of title duly recorded for ten years, or (2) annual listing of the land for taxation in the proper county for ten years, prior to the commencement of the action, if the land is subject to taxation, or (3) title by descent cast or devise from a predecessor in title who was in possession of the land, are not necessary to sustain a claim to title by a coterminous owner, Stokes v. Hart, 273 Ala. 279, 139 So.2d 300; Mintz v. Millican, 266 Ala. 479, 97 So.2d 769; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10, or to exercise a claim of right by prescription. Ford v. Bradford, 218 Ala. 62, 117 So. 429; Lay v. Phillips, 276 Ala. 273, 161 So.2d 477. But the payment of taxes, in connection with visible acts of ownership done upon the premises, is evidence tending to show claim of ownership and extent of possession. Brannan v. Henry, 175 Ala. 454, 465, 57 So. 967; Baucum v. George, 65 Ala. 259; Green v. Jordan, 83 Ala. 220, 3 So. 513; Knight v. Hunter, 155 Ala. 238, 46 So. 235.

■ In Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409, this court observed that as between respective claimants a boundary line may be established by adverse possession by which one party may thus acquire land extending to that line which would not otherwise have been his, and thereby may thus cause a strip of land to be attached to his holdings. Brantley v. Helton, 224 Ala. 93, 139 So. 283; Branyon v. Kirk, 238 Ala. 321, 191 So. 345. The statute,

Tit. 7, § 828, supra, does not prescribe a limitation on the right acquired by the twenty year prescription period of adverse possession. Jones v. Rutledge 202 Ala. 213, 80 So. 35; Smith v. Smith, 213 Ala. 670, 106 So. 194; Earnest v. Fite, 211 Ala. 363, 100 So. 637; Stearnes v. Woodall, 218 Ala. 128, 117 So. 643. And if a conveyance of his holding is sufficient to include the strip thus acquired, it will pass under it.

The rule as stated in McNeil v. Hadden, 261 Ala. 691, 694, 76 So.2d 160, 162, is as follows:

"'* * * If a coterminous landowner holds actual possession of the disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he his holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Smith v. Bachus, 201 Ala. 534, 78 So. 888; Hoffman v. White, 90 Ala. 354, 7 So. 816; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103; Shepherd v. Scott's Chapel, 216 Ala. 193, 112 So. 905.' Smith v. Cook, 220 Ala. 338, 341, 124 So. 898, 900. See Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55; Clarke v. Earnest, 224 Ala. 165, 139 So. 223; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10."

■ And where the requisite possession has existed for twenty years by tacking on the right and interest of his predecessor in title, the presumption created by prescription precludes judicial inquiry in a title so acquired. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477; Findlay v. Hardwick, 230 Ala. 197, 160 So. 336.

■ On April 12, 1928, one Thomas I. Jones, who is now deceased, executed a written affidavit with respect to the respondents' land in which he described the tract, the western boundary of which con-

forms to the School line, and he deposed that his brother, Perry L. Jones, the grantor of Joel B. Bearden, was, at the then present time, cultivating and living on the land as his home and was in open, notorious, adverse, continuous, and exclusive possession of all of the land without anyone else claiming any right, title, or interest in or to the property, except minerals. This affidavit was recorded on April 25, 1928, in the Probate Court of Jefferson County, Alabama. Such an affidavit is notice of the facts therein recited, Tit. 47, § 116, Code of Alabama, Recompiled 1958. It is also admissible as evidence of the facts therein recited and is sufficient to prima facie establish such facts where the party making it is deceased, Tit. 47, § 117, Code of Alabama, Recompiled 1958. On April 20, 1928, Perry L. Jones and wife conveyed this land, with the School line as the described western boundary, by warranty deed to Joel B. Bearden who went into actual possession. Subsequently on November 22, 1957, Bearden and wife conveyed by warranty deed all but five acres of the same land to the respondent, Southmont Development Company, a corporation, who went into possession. In the property descriptions contained in each of these deeds of conveyance the courses and distances of the disputed western boundary of the respondents' property are in all material respects the same as those constituting the School line.

J. B. Bearden, Jr., the son of Perry L. Jones' grantee, Bearden, testified that he moved on the tract to the east of the presently disputed boundary with his parents in 1928, after the above mentioned conveyance to his father by Jones, and that he grew up on the property, which his father used altogether for a dairy farm. He testified that he had ridden horseback a number of times through the gorges up on the bluff to get up the cattle that ranged on the bluff. His father had a fence built up there running from tree to tree to keep the cattle in, though the fence was not on the School line. He further testified that he

was familiar with the School survey which his family used as the boundary between them and Mr. Schwab, the complainants' predecessor in title, and, as long as they owned the property, from the late twenties until the early sixties, no one ever challenged the occupational use of the land by Bearden, nor was their boundary ever contested. In twice cutting the timber on the Schwab tract, which is now the complainants' land, the timbermen never cut beyond the School line. From the evidence, it appears that none of the Schwabs knew where the boundary was located, and have raised no issue as to its location as contended for by the respondents.

The assessments of the respondents' property, since 1929, have been by a metes and bounds description, giving the courses and angles. The School line is shown on all the maps of this quarter-quarter section in the tax assessor's records since 1929, as the division line between the two parcels. The assessment of the predecessor of this tract for the year 1929, was also a metes and bounds description per a plat that was attached with it.

■ The matter of the location of the line of the top of the bluff, west of which the complainants' land extends, would seem immaterial to our problem, because the evidence, which was heard ore tenus in open court before the judge trying the case, is ample to show that Southmont Development Company's possession, with that of Bearden's tacked on, has been actual, clear, notorious, continuous, adverse and exclusive up to the School line for the ten years required by Tit. 7, § 828, Code of Alabama, 1940, to meet the measure of proof to show adverse possession, and, for twenty years and beyond to establish absolute repose of title in Southmont by prescription. On the other hand, the complainants have failed to show that those preceding them in title exercise any acts of possession over the disputed area, other than that Herold Schwab, who did not know where the disputed boundary was, went on the property on one

occasion in connection with a prospective sale.

The final decree of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and SIMPSON, BLOODWORTH and MADDOX, JJ., concur.