This appeal presents an issue of adverse possession in a boundary line dispute between coterminous landowners.
In 1969 Plaintiff Mamie Lilly purchased some land in Baldwin County from Alabama Palmer. The land was inclosed by a fence, and, being "open" and containing approximately 7 1/2 acres, it was known in the community as "the 7 1/2-acre field." Ms. Palmer previously had cultivated cotton, corn, and sugar cane on the land.
Before receiving the deed to the property, plaintiff Lilly walked over the land with Ms. Palmer. Plaintiff testified that, based on the deed and her understanding with Ms. Palmer, she purchased the entire 7 1/2-acre field — "Everything that was inside the fence was what I was supposed to own."
In 1971 Ms. Palmer sold 20 acres of land to her nephew, defendant David Palmer. The 20-acre tract adjoined and lay just to the east of plaintiff's 7 1/2-acre field. *Page 524 
Sometime prior to the filing of this lawsuit in 1983, plaintiff discovered that some question existed as to her title to portions of the 7 1/2-acre field. She filed an action in the Baldwin County Circuit Court to quiet title to the property. She named six defendants and asked the court to decree that she was the "sole owner in fee simple" of the property.
The controversy between plaintiff and defendant Palmer concerned a strip of land consisting of 2.297 acres which constituted part of the eastern side of plaintiff's 7 1/2-acre field and part of the western side of defendant's 20-acre tract. Plaintiff and defendant both claimed the land by virtue of their respective deeds from Ms. Alabama Palmer. In addition, and in the alternative, plaintiff claimed the land by adverse possession. She claimed that she owned everything inside a fence, which was not located on the deed line, but was located to the east of the deed line and on the western portion of Palmer's 20-acre tract. See Appendix A for a location of the "deed line" and "old irregular fence," both running north-south.
At the non-jury trial, plaintiff testified, as follows, to support her claim of adverse possession: (1) the 7 1/2-acre field, including the disputed 2.297 acres, was inclosed by a fence; (2) she, or her grandson, had a residence located on the 7 1/2 acres; (3) she had horses pastured in the field; (4) she had someone mow the field every year; (5) she had a vegetable garden in the field; (6) she annually paid taxes on the land; and (7) in 1969 she had conveyed a right-of-way across the disputed strip to a Mr. and Mrs. Edwards.
Plaintiff testified as follows:
 "Q. When you bought the property — First, let's come up to the board and ask you to point out the property that you bought. You point it out to the Court if you would.
 "Come around, get down from your chair, and come around and show us.
 "A. Well, I bought what was fenced in. Let's just put it that way.
"Q. You come point it out.
"A. Okay. I don't know too much about these things.
 "Q. I'm going to take this down and you stand back a little bit. You get on your right so that the Judge can see what you are going to point out and what you will be saying here. You have seen this map [Appendix A] before; is that right?
"A. Yeah, but I still don't understand it.
 "Q. James Garrick and Associates has Mamie Lilly on it. Did you have him to do this survey for you?
"A. Yeah, I sure did.
 "Q. And you have seen this map before today; is that right?
"A. Uh-huh.
 "Q. In fact, you brought this to me when you retained me to represent you in this case; is that correct?
"A. Yes.
 "Q. Now, according to your deed in the Bill of Complaint here, you start over here and you go to the point of beginning. You go down here and on this same time you come down here and back up here, and then, over here. That piece in there is this line here.
 "That is what is called for in the deed. You understood that, didn't you?
"A. (No response.)
"* * *
 "Q. Let me ask you this. After you bought it, did you take possession of the land from the east fence to the west fence?
"A. The field, yeah, the whole field.
"Q. You took the whole field?
"A. That's right.
 "Q. And did it go up to the south boundary of the land that's now owned by the Edwardses?
"A. That's right.
 "Q. And did it go all the way to what they call, I believe this is the Red Hill Road?
"A. Yeah.
"Q. Did it go down to that point?
"A. That's right. *Page 525 
"Q. And we referred to that as Airport Road?
"A. That's right.
 "Q. And you got all this land from this point here up to here and back over here?
"A. (Nods head affirmatively.)
 "Q. And we got a line back over here as such. Here's where the point begins. Now, this shows on the map that this is to be a fence.
 "Did you take possession of the land after you bought it back to the fence over there?
"A. Back to the fence.
"Q. And did it go all the way to this fence?
"A. Right.
 "Q. And all the way down here to this intersection where it makes the V point?
"A. That's right.
 "Q. And on the north side, you went up to this point here?
"A. Yeah.
"Q. Is that correct?
"A. Yes, just the fence.
"Q. You speak up. He can't read your mind.
 "A. The whole field that was inside the fence, it was all of it."
Although references are made to certain points on the map, a portion of which is appended to this opinion as Appendix A, it is clear that she testified that she intended to possess and did, in fact, possess all the land inclosed within the fence, shown on Appendix A.
Plaintiff also produced two witnesses who testified that up until the time this lawsuit was filed, no one had claimed the field other than plaintiff and that plaintiff owned the entire 7 1/2-acre field.
Defendant offered the following evidence to rebut plaintiff's evidence of adverse possession for ten or more years: (1) he had annually paid taxes on the land, and (2) he had cut timber on the land.
The trial court rendered judgment for defendant Palmer, and in its final order simply said, "David Palmer is the owner of that part of the property described in his deed."
Plaintiff appeals to this Court from the judgment rendered for defendant Palmer. On appeal, plaintiff concedes that the description in her deed does not include the 2.297 acres in controversy, and that the trial court correctly determined that defendant's deed encompassed the 2.297-acre strip. Thus, the only issue plaintiff presents on appeal is whether the trial court erred in implicitly finding that plaintiff had not adversely possessed the 2.297-acre strip in controversy, as a matter of law.
In the instant case, the trial court found, for reasons undisclosed, that plaintiff failed to produce clear and convincing proof of her adverse possession. Defendant argues that the trial court's finding and judgment are entitled to a presumption of correctness because the evidence and testimony were presented ore tenus and because this is an adverse possession case. Indeed, it has long been the law in this state that "anytime a trial court has heard evidence presented oretenus and resolves conflicting questions of fact in favor of one of the parties, its findings will not be disturbed on appeal unless they were clearly erroneous or manifestly unjust." Scarbrough v. Smith, 445 So.2d 553, 555 (Ala. 1984) (adverse possession case).
The presumption developed in our law because the trial court has the benefit of seeing and hearing the evidence presented, and, therefore, is a better judge of the credibility of witnesses and the accuracy of certain evidence presented than is an appellate court. The cold record before an appellate court, no matter how meticulous its transcription, is incapable of truly reflecting certain human actions and reactions that occur during a trial. The special nuances of the human voice and the infinite number of human facial expressions are incapable of transcription, and, yet, we recognize them as frequently highly indicative of credibility. In addition, in adverse possession cases, the special nature of much of *Page 526 
the evidence presented makes clear transcription difficult. Witnesses frequently testify to the existence of "lines, locations, distances, monuments, culverts, fences and the like" by pointing or verbally referring to a diagram. Barnett v.Millis, 286 Ala. 681, 684, 246 So.2d 78, 80 (1971). That is true here, as shown by the quoted portion of plaintiff's testimony. An appellate court is without the benefit of the "pointing finger or any information which enables [it] to determine the particular line, location, distance, monument, culvert or fence to which the witness referred." Id.
Accordingly, the ore tenus presumption of correctness as to the trial court's findings of fact is "especially strong in adverse possession cases." Scarbrough, supra, at 556.
The presumption, however, even in adverse possession cases, is inapplicable where the facts are undisputed and the issue is resolved simply by applying the relevant law to these undisputed facts. Mardis v. Nichols, 393 So.2d 976, 979 (Ala. 1981) (boundary dispute between coterminous landowners where facts were "undisputed"; this Court reversed judgment of the trial court, which had heard testimony presented ore tenus and had found no adverse possession); see generally, SecurityInsurance Co. of Hartford v. Smith, 360 So.2d 280 (Ala. 1978). We find that, with one exception, the instant case involved undisputed facts. Plaintiff testified that she had intended to possess the entire field as inclosed by the fence; that she had a residence in the field; that she pastured horses in the field; that her son annually mowed the field; that she had conveyed a right-of-way through the field, that she had a vegetable garden in the field; and that she had paid taxes on the field. Defendant, himself, did not testify and did not produce evidence to contradict any of plaintiff's testimony, with the exception of her assertion that she had paid the taxes on the land. On this point, defendant did call as a witness an employee of the tax assessor and attempted to show through her testimony that he, not plaintiff, had paid the taxes on the property during the statutory period. The payment of taxes was obviously a disputed factual issue — the trial court's resolution of which is appropriate for the application of theore tenus presumption.
The trial court made no specific finding as to who paid the taxes on the property, but we nevertheless assume that the court "made those findings necessary to support its judgment."Tidwell v. Strickler, 457 So.2d 365, 369 (Ala. 1984). We, therefore, presume that the court found that during the statutory period the defendant had been assessed and had paid the taxes on the disputed strip. Of course, if we found this presumed finding of the trial court to be against the great weight of the evidence, we would have to reverse. Id. The evidence of record, however, both viva voce and documentary, is hopelessly confusing. We cannot say that the trial court's presumed finding that the defendant paid taxes on the disputed strip is clearly erroneous.
Our inquiry, however, is not ended by our finding that defendant, not plaintiff, paid taxes on the disputed strip for the entire statutory period, because plaintiff need not prove that she paid taxes on the property in order to prevail on her adverse possession claim. The Alabama Code does contain a section on adverse possession which sets forth as an alternative prerequisite to the successful maintenance of an adverse possession claim proof that the claimant has paid taxes on the property for the statutory period. Code 1975, § 6-6-200
(a)(2). In Cloud v. Southmont Development Co., 287 Ala. 544,547, 253 So.2d 298, 300 (1971), however, we explained that this prerequisite is inapplicable if the adverse possession dispute concerns a boundary between coterminous landowners:
 "Under Tit. 7, § 828, Code of Alabama, 1940, [the predecessor statute to present Code 1975, § 6-5-200], our adverse possession statute, the three alternative prerequisites, (1) a deed or other color of title duly recorded for ten years, or (2) annual listing of the land for taxation in the proper county for ten years, prior to *Page 527 
the commencement of the action, if the land is subject to taxation, or (3) title by descent cast or devise from a predecessor in title who was in possession of the land, are not necessary to sustain a claim to title by a coterminous landowner."[1]
Of course, proof of the payment of taxes by either the claimant or the legal title holder is evidence to be considered in evaluating an adverse possession claim;[2] but, it simply is not determinative on the question of adverse possession as between coterminous landowners.[3]
The determinative question in an adverse possession case between coterminous landowners is whether the claimant has shown, by clear and convincing evidence, Tidwell, supra, at 368, "actual, hostile, open, notorious, exclusive, and continuous" possession for 10 years. Grooms v. Mitchell,426 So.2d 820, 822 (Ala. 1983).
More specifically, in boundary line cases a major point of contention between the parties is usually the element of hostility in plaintiff's prima facie case. For possession to be hostile, the claimant must have intended to possess up to the line he claims. To prove this intent to possess, the claimant, of course, may testify as to his intention and he may have other witnesses testify to his past statements of intention.See, e.g., Mardis v. Nichols, supra. In the instant case, plaintiff testified that she intended to possess the entire 7 1/2-acre field. Defendant's attorney, on cross-examination, repeatedly and unsuccessfully attempted to get Ms. Lilly to admit that she did not intend to possess the 2.297-acre strip in controversy which is not described in her deed. Ms. Lilly unwaveringly maintained that she bought the entire field as enclosed by the fence: "I am claiming just what I bought. That's the way I bought it from what was inside the fence. I'm not claiming anything that's outside the fence. I bought what was fenced in." Ms. Lilly's testimony was clear and uncontroverted as to her subjective intention to possess the 2.297-acre strip.
Though necessary, proof of a subjective intent to possess(i.e., hostile possession) alone is insufficient to prove adverse possession. Ms. Lilly's clear and uncontroverted proof of her subjective intention to possess the disputed strip is for naught unless she also has proved that her hostile possession was actual, open, notorious, continuous, and exclusive.[4] We now proceed *Page 528 
to a discussion of plaintiff's proof of these remaining elements of her case.
At trial, there was no dispute that the 2.297-acre strip of land in controversy was a part of the 7 1/2-acre field that plaintiff claimed. The strip in controversy was the eastern portion of plaintiff's field, and was inclosed, along with the rest of the field, by a fence. Plaintiff's witness, Ms. Nora Bell Barren, testified:
 "[T]here has been fences around that piece of property ever since 1950 to my knowledge. I have worked in that field. You know, I even helped . . . plant cotton and corn. I helped . . . gather corn and helped pick cotton. I helped strip cane. You name it, I did it in that same field, that was the seven and a half acre field. . . . You know, there's a fence around that and always been around that ever since I knowed to my knowledge. That's ever since 1950."
Within the law of adverse possession, this Court has long recognized "that a fence is an outstanding symbol of possession." Mardis v. Nichols, supra, at 978. We are not alone. In 3 Am.Jur.2d Adverse Possession § 64 (1986), we find the following:
 "If a fence is constructed as a boundary line fence between two properties and if the parties concerned claim ownership of the land to the fence during the statutory period without interruption in their possession or control during that time, they will acquire title by adverse possession to any land that was improperly inclosed with or added to the land they owned at the time the fence was constructed. Long recognition and acquiescence by adjoining landowners in a boundary fence raises a presumption that the land was held adversely up to the fence." (Footnotes omitted.)
Furthermore, in American Law Reports in an annotation entitled "Fence as Factor in Fixing Location of Boundary Line — Modern Cases," it is stated:
 "[W]here the fence was built by both the party opposing, and the party claiming the fence, as the boundary, by the predecessors of both parties, or by a common predecessor of both parties, the courts have generally held that the fence had become the boundary by acquiescence or agreement." Annot., 7 A.L.R. 4th 53, § 2[a] at 61 (1981) (emphasis added).
The facts are uncontroverted in the instant case that the fence along plaintiff's eastern border and defendant's western border was in place when both plaintiff and defendant purchased their respective properties from Ms. Alabama Palmer, their common predecessor. We find that the fence, inclosing as it did, within plaintiff's 7 1/2-acre field the 2.297 acres in controversy, is evidence of plaintiff's open and notorious possession of the disputed strip.
Plaintiff also offered evidence, through her own testimony and that of others, that she, or her grandson, with her permission, had resided on the property for over ten years; that she had had the property mowed every year; that she had had a vegetable garden in the field; that she had generally had horses pastured in the field; that she had conveyed a right-of-way through the 2.297-acre strip in controversy to a Mr. and Mrs. Edwards; and that the community generally recognized the entire inclosed field as belonging to her. Maintaining a residence on land is clearly a *Page 529 
possessory act. Hurt v. Given, 445 So.2d 549, 551 (Ala. 1983) ("plaintiffs lived in or rented out a house on a portion of the 200 acres. . . . The maintenance of a house on one part of the 200-acre tract of land is consistent with true ownership of the entire 200 acres. Plaintiffs need not build a residence on each subdivision of the large tract in order to maintain possession of the large tract"). We have held that "[c]ultivation of . . . land is a sufficient possessory act to meet the requirements of adverse possession." Cambron v. Kirkland, 287 Ala. 531, 535,253 So.2d 180, 183 (1971); see also, James v. Mizell, 289 Ala. 84,88, 265 So.2d 866, 870 (1972).[5] And, we have recognized that the pasturing of animals on land adversely claimed may be evidence of adverse possession. Cambron, supra,287 Ala. at 535, 253 So.2d at 183. Likewise, the mowing of a lawn, or in this case, consistent with the character of the land, the mowing of a field may be evidence of adverse possession. Id.
Also, an act of conveyance by the adverse claimant may be evidence of adverse possession. Stiff v. Cobb, 126 Ala. 381,388, 28 So. 402, 404 (1899); 5 G. Thompson, Thompson on RealProperty" § 2544, at 614 (J. Grimes, repl. vol. 1979). And, finally, proof "that [a] fence was generally recognized by surrounding landowners and the community as a line fence" may be evidence of adverse possession. Mardis, supra, at 977. We find that all of the above uncontroverted evidence supports plaintiff's contention that her possession of the 2.297 acres was open and notorious.
Furthermore, one of defendant's witnesses testified that sometime in 1979 or 1980 he and defendant Palmer walked over defendant's property and discussed the now disputed boundary line. In response to defense counsel's questioning, this witness testified as follows:
 "A. The only thing that I know, the time that we went out there when we walked the line and come back to go over by the fence row there, he said at that time that he thought he owned on the other side of that road. He wasn't sure.
 "Q. He understood that he might have owned part of that on the other side?
"A. That's what he said to me." (Emphasis added.)
This testimony by defendant's own witness reveals that defendant apparently was aware that the fence may not have marked the true boundary between his tract and plaintiff's field. In other words, it appears that defendant had actual notice of plaintiff's claim. Such notice, of course, supports plaintiff's claim that her possession was open and notorious. Defendant Palmer lived in California and did not appear or testify at trial.
This testimony by one of his own witnesses, however, provides some evidence of defendant's acquiescence in the plaintiff's possession, i.e., defendant was aware that the fence line was possibly incorrect, and, yet, he took no action to determine what the true line was, or to correct the incorrect line. It is certainly the law in this state that acquiescence by the record title holder may be evidence of adverse possession. See, e.g.,James v. Mizell, supra, 289 Ala. at 88, 265 So.2d at 869 ("The long period of acquiescence and acceptance of the old and then the new fence by appellants or their predecessors in title, together with appellees' evidence of possession, further precludes their right to successfully deny appellees' claim of right to the disputed strip"). See also, Sylvest v. Stowers,276 Ala. 695, 166 So.2d 423 (1964).
As for the exclusive and continuous elements of plaintiff'sprima facie case of adverse possession, plaintiff testified that *Page 530 
she had been in exclusive and continuous possession of the field since she purchased it in 1969 from Ms. Alabama Palmer. Defendant did not dispute this.
The only evidence that defendant produced to controvert plaintiff's proof of adverse possession was that he had paid taxes on the disputed strip.
Even according this evidence a presumption of correctness under the ore tenus rule, as we explained earlier, payment of the property taxes by the record title holder does not prevent adverse possession of the property. See 5 G. Thompson, supra, at § 2543 at 609.
In his brief, defendant also argues that he cut timber on the land. The act by defendant of cutting timber on the property would tend to contradict plaintiff's claim that she had exclusively possessed the property for the statutory period. In addition, such action by the defendant would be evidence that he did not acquiesce in plaintiff's possession. Yet, when we checked this assertion in defendant's brief against the record, we found that defendant had cut timber on his own 20-acre tract, and not on the disputed 2.297 acres of land that plaintiff claims she adversely possessed.
In sum, we find that plaintiff's possessory acts regarding the 2.297-acre strip collectively[6] amount to clear and convincing evidence of her adverse possession. We reiterate that it is a rare case when this Court will overturn a finding by a trial judge who hears an adverse possession case presentedore tenus, but this is one of those rare cases.
Her evidence was uncontradicted, and we hold that as a matter of law, she hostilely, openly, notoriously, actually, exclusively, and continuously possessed the property for the requisite statutory period of 10 years. Accordingly, the judgment appealed from is due to be, and it hereby is, reversed, and judgment is rendered for the plaintiff.
REVERSED AND RENDERED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
[1] In fact, our adverse possession statute expressly states that it is not applicable to boundary disputes between coterminous landowners: "This section shall not be construed . . . to affect cases involving a question of boundaries between coterminous owners." Code 1975, § 6-5-200 (c).
[2] In Cloud, supra, we stated, "[P]ayment of taxes, in connection with visible acts of ownership done upon the premises, is evidence tending to show claim of ownership and extent of possession." 287 Ala. at 547, 253 So.2d at 298. On the other hand, the legal title holder may use proof of his payment of the property taxes to controvert an element of the claimant's prima facie case of adverse possession.
[3] See, e.g., 5 G. Thompson, Thompson on Real Property § 2543 at 609 (J. Grimes, repl. vol. 1979) ("the fact that the owner of the legal title pays taxes thereon from time to time does not prevent the running of the statute of limitations so as to defeat his title by adverse possession"). See also, Foster v.Foster, 267 Ala. 90, 93, 100 So.2d 19, 21 (1958) (an adverse possession case not involving coterminous landowners, but wherein this Court stated, "The fact that someone else, not in possession of the land, also listed the land for taxation during part of the period does not affect the right of the [adverse claimant] to establish title by adverse possession").
[4] Proof of an actual, open, notorious, continuous, and exclusive possession generally consists of evidence of a claimant's overt acts as they relate to the claimed property. A finding of such overt acts which amount to actual, open, notorious, continuous, and exclusive possession may also provide an inference that the claimant's possession was hostile, i.e., a claimant's overt actions in regard to the property may give rise to an inference that his subjective intent was to possess the claimed property. Hence, in Kubiszynv. Bradley, 292 Ala. 570, 575, 298 So.2d 9, 13 (1974), we observed that "although past statements of intention by the adverse claimant might be entitled to consideration, primarily, it is the acts of the adverse claimant to which the court must look to determine objectively whether there is a claim of right to the disputed area." Because the same overt acts may constitute evidence of actual, open, notorious, exclusive, and continuous possession, while at the same time providing an inference of subjective intent to possess, necessary for proof of hostile possession, we have many times said that "[t]he controlling fact [in boundary dispute cases] is one of intention." Brantley v. Helton, 224 Ala. 93, 139 So. 283
(1932). See also, Sylvest v. Stowers, 276 Ala. 695,166 So.2d 423 (1964); Salter v. Cobb, 264 Ala. 609, 88 So.2d 845 (1956); and, Kubiszyn, supra, 292 Ala. at 575, 298 So.2d at 13 ("The question is whether one's acts speak clearly of an intent to possess his coterminous landowner's lands as his own").
This, however, is not to say that once a claimant has proved subjective intent to possess, he need not prove the other elements of his adverse possession case. Indeed, he must. The language in our past cases to the effect that intent is controlling in a boundary dispute merely recognizes that proof of intent and thereby hostility may sometimes be made with the same evidence that proves the remaining elements of claimant's adverse possession case, namely, actual, open, notorious, exclusive, and continuous possession.
[5] In the Mizell case, we rejected the appellants' argument that the appellees had not proved adverse possession because the appellees had not shown that they had actually possessed the land in controversy up to the hedgerow that they claimed as the proper boundary. We there opined, "It would be unreasonable to require a landowner to actually use continuously all the land within the bounds of his fence line. The existence of a hedgerow is actually a use of the land." 289 Ala. at 88,265 So.2d at 869.
[6] See Hurt v. Given, 445 So.2d 549, 552 (Ala. 1983) ("acts of ownership must be considered collectively rather than independently"). *Page 531 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 532