MADDOX, Justice.
This case involves a boundary line dispute, and, as is true of so many we receive for review, it raises the question whether a fence line, not located on the line referred to by the deeds, should be recognized as the true boundary because of the adverse possession by one of the parties.
Plaintiffs in the court below, Vincent and Charles Bruno, pursuant to the provisions of Code 1975, § 35-3-1, et seq., filed a complaint in which they sought to have a determination made of the true boundary line between their land and that of the defendant, John Carter, who filed an answer in which he denied that a dispute existed as to the boundary line and in which he alleged that an existing fence, although not located on the common boundary line described in each party’s respective deed, had been adopted and recognized by the parties as the line for more than forty years.
After hearing ore tenus testimony from numerous witnesses, the trial court concluded that Carter had adversely possessed the disputed area lying between the fence and the government survey line described in the deeds as the boundary line.
Plaintiffs appealed, claiming that the trial court’s findings were against the great weight of the evidence. We affirm.
Because plaintiffs claim that the decree of the trial court is against the great weight of the evidence, we set out the tendencies of the evidence from the transcript of the trial.
In 1921, Charles S. Bruno, father of the plaintiffs, acquired “paper title” to, and went into possession of, certain lands, including, viz.:
“The Northwest Quarter of the Northeast Quarter of Section EIGHT, Township SIX North, Range EIGHT east, Monroe County, Alabama.”
In 1966, the plaintiffs, Vincent and Charles Bruno, obtained “paper title” to, and went into possession of, the above described lands.
From 1930 until the present, Vincent Bruno managed the subject lands, first for his father, and then for himself and his brother. The land in question .is primarily timber land, with some open pasture land interspersed therein. There was evidence that Vincent Bruno had cultivated timber on the tract, cut timber from it in 1940-41, 1958, and 1961, but whether timber was cut to the fence line or to a marked survey line was in dispute. He testified that the government survey line marking the south line of the forty-acre tract in question was marked with white paint in 1940, and that the line was shown to him by one Howard Faulk, a tenant on the Bruno property, in 1940. Bruno further testified that he saw no fence near the south line at that time.
In 1958, Bruno employed Rob Andress, a licensed surveyor, to locate the government survey line and to blaze, hack, and paint trees to locate the line. There was evidence that Andress reestablished the government survey line in 1958 by surveying from a proven comer and using government field notes. Andress testified that he noticed a barbed-wire fence meandering north of a creek which lies north of the south line of the forty-acre tract established by his survey at that time.
In 1966, Bruno entered into a timber management contract with McMillan Bloe-del, Inc., covering the Bruno lands and including the area in dispute in the case at bar. Floyd Dailey testified that as a line crew foreman for McMillan Bloedel, Inc., he personally participated in “chopping, measuring, blazing, hacking and painting” the Bruno line in 1968 and 1969 and that the line painted yellow by his crew was the same line previously painted reddish-orange by Andress in 1958. Dailey also testified that he noticed white paint in several places on the Bruno line. Finally, Dailey testified that he noticed a fence north of the painted line, that the trees and under *520 brush were very thick, and that the fence was in fair shape.
Edd Kennedy testified that as area forester for McMillan Bloedel, Inc., he was familiar with the Bruno lands and that the south line of the subject Bruno tract had been marked and painted by McMillan Bloe-del, Inc. in 1969,' 1976, and 1983. He further testified that he had observed the fence lying north of the painted line; that in 1983, Carter advised him that he considered the fence to be the line between his land and Bruno’s, and that Kennedy testified that no timber was cut across the fence line because of Carter’s claim. Finally, Kennedy testified that prior to 1983, neither Carter nor anyone else had objected to the painted line or claimed the fence to be the correct boundary line between Bruno and Carter.
There was some evidence that the fence was old and ran east and west generally, but zigzagged.
Defendant Carter testified that his land was owned by someone named Ryland before his father took “paper title” to it by deed from Ryland in 1947, the deed describing his land as follows:
The Southwest Quarter of the Northeast Quarter of Section EIGHT, Township SIX North, Range EIGHT East, Monroe County, Alabama.”
He further testified that a fence was located on the north side of his land and that he had been familiar with the subject area since the early 1940’s. Carter testified that he and his father repaired the fence periodically, that they and Ryland before them kept cows on the lands, that he hunted and fished on the land, and that Faulk kept cows on the Bruno lands north of his lands.
There was no testimony as to who built the fence, when it was built, and for what purpose, or that the coterminous owners had agreed that the fence represented the boundary line between them. Nevertheless, Carter testified that he and his father had cut timber and cedar posts in the area between the painted line and the fence. He also testified that the first time he noticed the painted line was in 1983, but on cross-examination, admitted that “there could have been [a painted line years earlier].”
Cecil Hornady and Dick Carter testified that as boys in the 1930’s, each hunted and fished in the area in question and that there was a fence along the creek, which meandered north of and at points on the painted line, and that Ryland and Faulk, Bruno’s tenant, both kept cows on the lands in question.
There was evidence that a cement marker or monument had been in place for many years at the eastern terminus of the fence that Carter claimed was the boundary line, and that the fence continued eastward and formed the boundary between lands owned by the Brunos and one Henderson.
For a better understanding of the location of the fence and the “painted” line, we attach an exhibit as Appendix “A”.
The Brunos contend that the evidence was insufficient to establish the fence as the boundary line between the parties and that “a more reasonable assumption as to the purpose of those who constructed the [fence] was as a pasture fence and not as a boundary line fence.”
In their brief, the Brunos state the applicable principles of law that this Court must apply in its review of a decision made by a trial judge, who hears a case of this nature without a jury and hears ore terms evidence. They state:
“Two well established, time honored propositions of law create the dilemma herein:
“1. ‘ * * * Adverse possession becomes a perfect title on the theory that the true owner has by his own fault and neglect failed to assert his right against the hostile holding, but all presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile thereto (citations omitted).’ Knowles v. Golden Stream Fishing Club, Inc., 331 So.2d 253 (Ala.1976), at page 254. Also see, Prestwood v. Hunt, 285 Ala. 525, 234 So.2d 545 (Ala.1970).
*521 “2. ‘It is long settled in this state that where conflicting evidence has been taken ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this court will not disturb the trial court’s conclusions unless clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence (citations omitted).’ Moore v. Johnson, 471 So.2d 1250 (Ala.1985), at page 1251.”
The Brunos contend that the facts of this case show that Carter’s acts of adverse possession are similar to those in this Court’s cases of Knowles v. Golden Stream Fishing Club, Inc., 331 So.2d 253 (Ala.1976), and Prestwood v. Hunt, 285 Ala. 525, 234 So.2d 545 (1970), in which the trial court and this Court recognized the government survey line as the true boundary.
In Knowles, this Court, citing Prest-wood, did uphold a finding by the trial judge that the acts of the adverse claimant there did not constitute adverse possession. In Knowles, however, this Court also applied the well recognized principle that where ore tenus evidence is presented in a nonjury case, and is conflicting, every presumption is indulged in favor of the trial court’s findings.
Even though there was evidence presented that Vincent Bruno or his agents marked the boundary between him and Carter, we are not convinced that this fact conclusively shows that the trial court erred. In Hurt v. Given, 445 So.2d 549 (Ala.1984), this Court held that the marking of boundaries, taken together with other acts, may constitute possession. There, in a case based on stipulated facts, the trial • court found that adverse possession was established where the adverse claimants had undisputedly owned an entire 200-acre tract, including the disputed 40-acre tract, because they had attempted to properly pay taxes on the entire 200 acres, and had maintained a home, cut timber, and marked the boundaries of the 200-acre tract. We affirmed. Here, the evidence was presented ore tenus and Carter presented evidence, which, if believed, demonstrated that three separate cuttings of timber had been made up to the fence since 1947, that there had been continuous maintenance of the fence since 1947, and that there had been pasturage up to the fence since 1947. Accord, Lilly v. Palmer, 495 So.2d 522 (Ala.1986), in which this Court overturned a finding by the trial court that the surveyed boundary line was the true line in a case where the adverse claimant claimed possession up to a fence. There, the Court held that a fence is an outstanding symbol of possession, and adopted the following principle:
“If a fence is constructed as a boundary line fence between two properties and if the parties concerned claim ownership of the land to the fence during the statutory period without interruption in their possession or control during that time, they will acquire title by adverse possession to any land that was improperly inclosed with or added to the land they owned at the time the fence was constructed. Long recognition and acquiescence by adjoining landowners in a boundary fence raises a presumption that the land was held adversely up to the fence.” Quoting 3 Am.Jur.2d Adverse Possession § 64 (1986).
Based upon the foregoing, and applying the usual presumption of correctness of the trial court’s decree in such cases, we are of the opinion that the lower court’s decree is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
*522 APPENDIX A
[[Image here]]