RICHARD L. HOLMES, Retired Appellate Judge.
This case involves a boundary line dispute between two coterminous landowners, Buell L. Blackmon and Nancy Calvert, and Calvert’s daughter, Lesley Calvert.
Our review of the record reveals the following pertinent facts: In 1965 Nina Lauder-dale, a widow, sold a portion of the property that she and her husband owned to Billy *796 Adamson and his wife, Edna Adamson. In 1965 Billy Adamson constructed a fence, which ran north and south, on what he believed to be his western boundary. However, this fence was actually constructed on the Lauderdale property.
In 1986 Billy Adamson and Edna Adamson sold some property to their son, Christopher Ray Adamson. Billy Adamson testified that when he sold the property to his son, he intended to sell to the fence line. In 1987 Chris Adamson and his wife, Joni W. Adam-son, sold two acres of the property that he had purchased from his parents to James Belcher and his wife, Ida Belcher. The Bel-chers sold this two-acre tract to Blackmon in 1991, and Blackmon constructed a house on the property that he had purchased. This two-acre tract is adjacent to, and due east of, the property owned by the Calverts.
In 1983 the Lauderdale family conveyed some property to Bert W. Calvert and his wife, Nancy Calvert. In 1986 Bert Calvert conveyed the property to Nancy C. Calvert and her daughter, Lesley Calvert. In 1992 a survey conducted at the request of the Cal-verts indicated that Blackmon’s house encroached on the Calverts’ property.
Blackmon filed a complaint against the Calverts in May 1993, requesting that the trial court determine the true and correct boundary line between his property and the Calverts’ property. The Calverts filed an answer and a counterclaim, seeking to have Blackmon ejected from the property in dispute and seeking compensatory and punitive damages. The Calverts amended their counterclaim, seeking an equitable lien on the property in dispute if Blackmon were awarded title to the disputed property. The Cal-verts alleged that a judgment lien had been imposed on their property in 1992 and that their satisfaction of this judgment had bene-fitted both the property in dispute and Blackmon.
Blackmon filed a third-party complaint against the Belchers, seeking compensation from the Belchers of any sums assessed against Blackmon by the Calverts’ counterclaim.
Blackmon also filed a third-party complaint against Chris Adamson and his wife, Joni W. Adamson. In this third-party complaint against the Adamsons, Blackmon requested that if the trial court determined that the fence line was not the true and correct boundary between the Blackmon and Calvert properties, then the trial court should adjust the Adamsons’ boundary line to ensure that Blackmon has a two-acre tract. Blackmon also requested that he be awarded “such sums of money to pay his reasonable attorney’s fees and costs incurred in this matter.”
The Adamsons filed an answer and a cross-claim against the Calverts. In their cross-claim, the Adamsons requested that the trial court enter an order establishing that the Adamsons owned the property conveyed by adverse possession and that the boundary line between the Blackmon and Calvert properties was the fence line, which had been constructed and maintained for a period of more than 20 years.
The Calverts filed a complaint against the Belchers in June 1993. In this complaint the Calverts alleged that the Belchers were involved in a conspiracy with Blackmon to slander the Calverts’ title to their property. Specifically, the Calverts alleged that in a deed dated April 1993, the Belchers attempted to convey to Blackmon property which lay west of the two-acre tract conveyed to Black-mon in the March 1991 deed. The Calverts requested that the trial court award compensatory and punitive damages and cancel the April 1993 deed.
These two cases were consolidated for purposes of trial. A non-jury trial was held in April 1995.
The trial court issued its order, finding that the boundary line between the Black-mon and Calvert properties was “the established fence line that has been maintained by Blackmon and his predecessors in title continuously, openly, notoriously, exclusively, actually, and hostile for more than twenty (20) years or since approximately June 17, 1965.” The order also awarded a judgment of $900 against the Belchers in favor of the Calverts and a judgment of $1,600 against the Adam-sons in favor of the Calverts.
*797 The Calverts filed a motion for a new trial or, in the alternative, a motion to alter, amend, or vacate the judgment. The motion was denied, but a corrected order was issued. In the corrected order, the trial court ordered the following: (1) the Belchers were to pay $900 to the Calverts on the Calverts’ complaint against the Belchers; (2) the Adamsons were to pay $1,600 to Blackmon on Blackmon’s third-party complaint against the Adamsons; and (3) Blackmon was to pay $1,600 to the Calverts “to compensate [the Calverts] for their expenses incurred in this cause.”
The Calverts appeal, and Blackmon filed a cross-appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
The dispositive issue on appeal is whether the findings of fact made by the trial court are supported by the evidence.
We note that in cases where the trial court enters an order based on evidence received at an ore tenus hearing, its judgment is presumed correct. Moore v. Williams, 519 So.2d 1337 (Ala.1988). The judgment of the trial court will be reversed only if it appears, after consideration of the evidence and all reasonable inferences to be drawn therefrom, that the judgment is plainly and palpably wrong. Moore, 519 So.2d 1337.
Further, we recognize that our supreme court in Lilly v. Palmer, 495 So.2d 522 (Ala.1986), stated that the presumption of correctness which attaches to the findings of fact made by the trial court after an ore tenus hearing is particularly strong in an adverse possession case. The claimant in an adverse possession case must show that there was “actual, hostile, open, notorious, exclusive, and continuous” possession for the statutory period. Grooms v. Mitchell, 426 So.2d 820, 822 (Ala.1983). Here, there is evidence to support the conclusion that Blackmon met his burden of establishing adverse possession.
Suffice it to say that the portion of the judgment of the trial court establishing the boundary line as the fence line erected in 1965 is supported by the evidence. Therefore, for this court to reverse would require that we substitute our judgment for that of the trial court. This, the law does not permit. Grubbs v. Crosson, 634 So.2d 593 (Ala.Civ.App.1994).
We now look to that portion of the trial court’s order which awarded monetary damages. We are unable to determine from the wording of the trial court’s order a basis for the award of the various money judgments. There is no basis for the trial court to award expenses and/or attorney fees absent a contract allowing such an award, a statute authorizing such an award, or by special equity. Tomlinson v. G.E. Capital Dealer Distributor Finance, Inc., 646 So.2d 139 (Ala.Civ.App.1994). None of these factors are present in this case. Therefore, we reverse that portion of the trial court’s judgment and remand it to the trial court for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.