This is a boundary-line dispute. On November 19, 1999, Janice Wesson and Eunice Burkhalter filed an action seeking to clear title to a parcel of land consisting of approximately 4.89 acres. The parcel is a strip of land between their property and property owned by Sidney Hudman and Jeanette Hudman, husband and wife. They also sought a temporary restraining order seeking to require the Hudmans to remove a fence from the disputed parcel. The Hudmans answered, claiming title to the parcel through adverse possession. Following a bench trial, the court entered a judgment in favor of Wesson and Burkhalter, declaring that a survey Wesson and Burkhalter had had performed in January and February 1998 ("the Jackson survey"), established the true boundary of the disputed parcel. The trial court further ordered the Hudmans to remove from the parcel all fencing and a billboard they had allowed to be placed on the disputed parcel. In addition, the court awarded Wesson and Burkhalter an attorney fee in the amount of $2,750.
The Hudmans appealed to the Supreme Court, claiming the trial court had erred in failing to recognize their claim to the property through adverse possession, in ordering them to remove the billboard, and in awarding an attorney fee. The Supreme Court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975. *Page 1115 
It is well settled that a trial court's judgment based on ore tenus evidence is presumed correct and will be affirmed if it is supported by credible evidence. Todd v. Owens, 592 So.2d 534 (Ala. 1991). The presumption of correctness is particularly strong in a case involving a boundary-line dispute, because of the difficulties an appellate court faces in reviewing the evidence in such a case. Bearden v. Ellison,560 So.2d 1042 (Ala. 1990). This presumption of correctness is further enhanced in cases in which title to the disputed property is claimed through adverse possession. Lilly v. Palmer, 495 So.2d 522 (Ala. 1986). To establish a claim to property by adverse possession, the claimant must present clear and convincing evidence of "actual, hostile, open, notorious, exclusive, and continuous" possession for the statutory period. Grooms v. Mitchell, 426 So.2d 820, 822 (Ala. 1983). Boundary-line disputes between coterminous landowners require a showing of adverse possession for a 10-year period. Johnson v. Brewington, 435 So.2d 64
(Ala. 1983).
In 1967, the Hudmans purchased from Addie Robinson a 64-acre parcel in Chilton County, located west of Interstate Highway 65. Their title to the property is evidenced by a warranty deed recorded in the Probate Court of Chilton County. Wesson and Burkhalter purchased a 155-acre parcel from Dera Lee Dansby on April 25, 1988; their title is evidenced by a warranty deed recorded in the Probate Court of Chilton County. The largest portion of Wesson and Burkhalter's property lies east of Interstate 65. Wesson and Burkhalter also own a 4.89-acre parcel lying on the west side of the interstate highway. This 4.89-acre parcel adjoins the Hudmans' 64-acre parcel, along the west line of the 4.89-acre parcel.
Sidney Hudman testified that when the Hudmans purchased their property, they did not have the parcel surveyed, but, he said, he "walked down the interstate fence" (apparently a fence running alongside the highway) to survey the boundary line. He testified that soon after he purchased the property, he asked Joel Brooks, who was renting the adjoining parcel later purchased by Wesson and Burkhalter, where the boundary line between the two parcels was located. According to Mr. Hudman, Brooks did not give an exact answer, but told him that the boundary was within a foot or two of a billboard advertising a restaurant; Mr. Hudman said Brooks told him that the billboard was on the Hudman property and that Mr. Hudman would be entitled to collect rent for allowing the sign to remain on his property.
The record contains a copy of a lease, dated May 25, 1967, pursuant to which the Hudmans[1] allow the restaurant to maintain a sign on their property. The lease term is one year; the lease is automatically renewable, and the annual lease payment is shown as $25. Mr. Hudman testified that he had collected the annual payments on the sign lease, except for certain years when Alvin Skinner had held title to the property and certain years that John Dennis had owned the property.[2] *Page 1116 
In 1983, the Hudmans transferred the property to Skinner. At that time, they had Bobby Seales, an unlicensed surveyor, prepare a survey under the license of R.B. Perry. This survey indicated that the boundary line between the Hudman property and the 4.89-acre parcel owned by Wesson and Burkhalter ran 30 feet west of the line established by the Jackson survey. This 30-foot-wide strip of land along the boundary line between Wesson and Burkhalter's 4.89-parcel and the 64-acre parcel owned by the Hudmans is the disputed strip of property that is the subject of this action.
In 1994, John Dennis, who at that time owned the Hudman property, approached Janice Wesson about purchasing the entire 4.89-acre parcel. She refused to sell the property, and he continued to attempt to persuade her to sell, arguing that she did not have a means of ingress to and egress from the property. When she insisted that she did have access to the property by way of an old public road, Dennis erected a one-strand barbed-wire fence around the boundary of his property as reflected on the survey prepared by Seales; that fence enclosed the disputed 30-foot-wide strip of property, thereby blocking access to the 4.89-acre parcel from the old public road. Shortly after erecting the fence, Dennis transferred the Hudman property back to the Hudmans. The erection of the barbed-wire fence prompted Wesson and Burkhalter to initiate this action.
The Hudmans did not establish by clear and convincing evidence that they had exercised open, hostile, exclusive, and continuous possession of the disputed strip of land for the 10-year period required for one to establish a claim by adverse possession to property between coterminous landowners. See Johnson v. Brewington, 435 So.2d at 65.
The only evidence that even remotely suggests the Hudmans claimed the disputed strip of property for the requisite time is the 1967 lease[3]
they executed, which permitted a restaurant to place a billboard on the property in exchange for an annual fee. However, this evidence falls short of demonstrating open, exclusive, and continuous possession for the required 10-year period. The lease does not specify the precise location of the sign; the terms of the lease provide only that the sign will be located approximately one mile from the restaurant. Although the Jackson survey, prepared in 1998, reflects a precise location of the sign and indicates that it encroaches onto the property owned by Wesson and Burkhalter, no clear evidence indicates that in 1967 the sign was located in that same spot. In fact, Harold Wilson, a professional land surveyor, testified at trial that in the 1950s he had surveyed the property now owned by Wesson and Burkhalter and that many of the markers he had set when he conducted that survey are now missing. Wilson also testified that when the sign was initially installed it either was located on property now owned by Wesson and Burkhalter or was on a county right-of-way; he could not be sure which. The record contains no clear evidence to establish exactly where the sign was initially installed or *Page 1117 
to establish that it had remained in the same location continuously for 10 years. We therefore affirm that portion of the trial court's judgment that establishes as the true boundary line between the properties the boundary line depicted on the Jackson survey.
In addition, we are unpersuaded by the Hudmans' argument that the trial court committed reversible error in ordering them to remove the billboard at their own expense. The Hudmans contend that the restaurant owns the sign and that because it is not a party to this action, the trial court is without authority to order the Hudmans to have it removed. This reasoning, however, is flawed. The Hudmans negligently executed a lease purporting to authorize the placement of a sign on property they did not own. We conclude that the trial court properly ordered the Hudmans to remove the sign; that portion of the judgment ordering the removal is affirmed.
Finally, the Hudmans contend that the trial court erred in awarding an attorney fee. In Alabama, it is well established that one is entitled to an award of an attorney fee only if the award is authorized by statute, is provided for by the terms of a contract, or is justified by special equity. Warren v. Baptist Med. Ctr.-Montclair, 642 So.2d 476
(Ala.Civ.App. 1993) (citing Reynolds v. First Alabama Bank ofMontgomery, N.A., 471 So.2d 1238 (Ala. 1985)). The trial court stated no basis for its attorney-fee award. This case does not involve a statute or a contract; therefore, the only possible basis for an attorney-fee award would be the "special-equity" exception. This "special-equity" exception allows the court to award an attorney fee in a situation when the attorney's efforts have created a common fund out of which fees will be paid or those efforts have conferred a benefit on the general public.James v. James, 768 So.2d 356, 361 (Ala. 2000). No such circumstances are present in this case. We find no basis on which the trial court could properly award an attorney fee in this case. See Calvert v. Belcher,678 So.2d 795 (Ala.Civ.App. 1996). Therefore, that portion of the judgment awarding an attorney fee is reversed.
This case is remanded with instructions for the trial court to set aside the attorney-fee award.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Yates, P.J., and Crawley, Pittman, and Murdock, JJ., concur.
[1] The lease was executed by Sidney Hudman; his wife did not sign the lease. However, it appears from the record that Sidney Hudman executed the lease for himself and his wife.
[2] In 1983, the Hudmans sold their property to Mr. Hudman's nephew, J. Alvin Skinner, retaining a mortgage on the property. Skinner transferred the property back to the Hudmans in January 1985, presumably because he was unable to pay the indebtedness. In October 1985, the Hudmans transferred title to their property to John Dennis, receiving a down payment of $1,000, financing the balance of the purchase price, and holding a mortgage on the property. In May 1995, Dennis transferred the property back to the Hudmans, in exchange for a cancellation of the debt.
[3] This "sign space lease," executed by Sidney Hudman on May 25, 1967, for the term of one year, provides by its terms that the lease is automatically renewable. Sidney Hudman testified that the sign was present on the property when he initially "walked" the property to examine its boundary lines, but it is unclear whether the sign space had been previously leased to the restaurant by Addie Robinson, from whom the Hudmans had purchased the property.